## SCHEUNERT VS. KAEHLER.

*Counter-claim.*

1. Where the complaint charges the *wrongful conversion* of the proceeds of goods sold by defendant on commission, the *tort* is the subject of the action, and sole foundation of the plaintiff's claim.
2. In such action, the defendant cannot set up a counter-claim for damages caused by plaintiff's breach of stipulations contained in the agreement under which the goods were delivered, but not having any reference to the very goods in question.

    *Thus*, where it was agreed in the lease of a mill, that lessee should send *all* his flour to lessor to be sold on commission, and that he should furnish two teams of lessor with constant work, in an action by lessee against lessor for *wrongful conversion* of the proceeds of certain

flour sold by him on commission under said agreement, lessor cannot set up, by way of counter-claim, that lessee did not furnish constant work for said teams, and had sent part of his flour to other persons to be sold on commission.

APPEAL from the County Court of *Milwaukee* County.

The complaint in this case stated, that between the 2d of November, 1867, and 20th of April, 1868, the plaintiff delivered certain flour and barley to the defendant, who was a commission merchant, to be sold at an agreed rate of commission; that the same were sold by defendant for $4,908.71; that, on, etc., there remained in defendant's hands, after deducting commissions, the sum of $4,785.99, "received by him in a fiduciary capacity as such commission merchant, the property of the plaintiff," which sum the defendant refused to pay or deliver to the plaintiff, although demand was duly made therefor, on, etc., and has, with intent to defraud the plaintiff, unlawfully converted it to his own use, to the damage of the plaintiff $5,000; for which judgment is demanded. Answer: 1. A general denial. 2. A counter-claim, which states, among other things, that on the 2d of November, 1867, the defendant, by a written lease signed by both the parties, let to the plaintiff a certain flour and barley mill in Ozaukee county, for five years from the 11th of that month. The third defense was as follows: "For a further defense, by way of counter-claim, the defendant says, that the plaintiff, by the lease mentioned in the preceding defense, agreed to furnish two teams belonging to the defendant with constant work or lading to Milwaukee, at the rate of fifty cents per barrel for flour, and that all the flour sent from said mill, except such as might be sold by the plaintiff himself, should be delivered to the defendant, in Milwaukee, to be sold by him on commission; that all the flour and other property mentioned in the complaint as sent to the defendant for sale, were delivered in pursuance of said agreement; that the defendant, at all times since the 11th of No-

vember, 1867, had two teams ready to haul flour from said mill to Milwaukee, but that plaintiff, ever since the 1st of December, 1867, refused to furnish constant work or lading for them, in consequence of which they were for a long time before the commencement of this action wholly unemployed, and the defendant lost the profit which he might and ought to have had for their work, amounting to $500; that all the flour sent from said mill (except such as the plaintiff himself sold) had not been delivered to the defendant to be sold on commission, but that between the said 11th day of November and the commencement of the action, 300 barrels of flour had been sent from said mill by the plaintiff to other persons in Milwaukee, who sold the same for him on commission, whereby defendant was deprived of the commission he ought to have received thereon, amounting to $75; for which sum, and the damages before mentioned, he demanded judgment by way of counter-claim. A demurrer to this defense was overruled by the county judge; and the plaintiff appealed.

*Mann & Cotzhausen*, for appellant.

*Merrick & Rietbrock*, for respondent:

The contract of the defendant to receive the flour for sale at an agreed commission is the foundation of the plaintiff's claim, or the subject of his action. The defendant is charged with having received the proceeds of the flour in a fiduciary capacity, and hence it is said the action is in tort. But how does it become an action in tort? The defendant sold the flour and retained the money for it, which he had a right to do under the contract. The authorities are, that trover cannot be maintained. *Harris v. Schultz*, 40 Barb. 315, and cases there cited. The defendant is charged with a wrongful conversion of the money, for which he would be liable to arrest under chapter 127, R. S., 1858; but the contract under which the flour was received and sold is the subject of the action, and the foundation of the claim; that the action is in tort and not on contract

can make no difference.   A counter-claim may be set up in an action *ex delicto*.   It is only necessary that it arise out of the contract or transaction which is the foundation of the plaintiff's claim, or that it be connected with the subject of the action. The counter-claim in this case is connected with the contract for the delivery of the flour, and arises out of it.   See *Akerly v. Vilas*, 21 Wis. 111.

DIXON, C. J.   The question in this case arises upon that provision of the statute which authorizes the defendant to plead as a counter-claim " a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action."   R. S. ch. 125, § 11, subd. 1.

The complaint is in tort for the conversion of money, the proceeds of goods sold by the defendant for the plaintiff on commission ; and the third separate defense, to which the demurrer is interposed, sets up, by way of counter-claim, a breach of the contract under which it is alleged the goods were delivered to be sold on commission, and claims damages on account of such breach.   The alleged breach consists in a violation of the contract, not in respect to the goods sold, the proceeds of which the plaintiff seeks to recover in this form of action, but in relation to other and quite different subjects, namely, the failure of the plaintiff to furnish employment for certain teams of the defendant, and to deliver to the defendant other goods to be sold on commission, as it is averred he had agreed to do.   Assuming that a counter-claim may be pleaded to an action of tort, a question not necessary to be decided, and assuming also that no objection exists because the contract for the breach of which the defendant claims damages, is not *set forth in the complaint*, but that it would be admissible, if at all, under the last clause of the subdivision, as *connected with the subject of the action*, the question resolves itself into

an inquiry as to the origin of the cause of the action stated in the complaint — whether it arises upon the contract set forth in the answer, or originates in facts outside of and disconnected with that contract. If the former, then the counter-claim would seem to be clearly within the statute, and must be allowed; but if the latter, then it is not a cause of action arising out of the contract or transaction set forth as the foundation of the plaintiff's claim, nor connected with the subject of the action, and must be disallowed. The action is one of that large class with which we are all familiar, where the plaintiff has a choice of remedies, to sue upon a contract as for an express or implied violation of it, or to maintain an action of tort for the wrong which has been done him; and the question presented is in substance the same as that involved in the cases *In re Mowry*, 12 Wis. 52, and *Cotton v. Sharpstein*, 14 id. 226, as to the liability of parties to arrest under the clause of the constitution prohibiting imprisonment for debt arising out of or founded on a contract, expressed or implied. As was held in those cases, the subject of the action is the tort or wrong which was committed in the conversion of the money. That is the foundation, and the sole foundation, of the plaintiff's claim in this form of action; for unless the money was unlawfully converted, the action cannot be maintained. The cause of action then originates in the conversion; and, for the purpose of testing the admissibility of the counter-claim, the conversion alone must be looked to, and it can make no difference that there was a contract upon which the plaintiff had a concurrent right of action in case he had seen fit to bring a suit of that kind. The contract is entirely out of this case, and no more to be regarded than if it did not exist. For these reasons, therefore, we are of opinion that the counter-claim in question is inadmissible, and that the order of the court below overruling the demurrer of the plaintiff

must be reversed and the cause remanded for further proceedings according to law.

*By the Court.* — Ordered accordingly.