MULBERGER and others vs. KOENIG and others.

*March 3 — March 31, 1885.*

PLEADING: EQUITY.  *(1) Counterclaim.  (2) Partition of water power:
Method of using water: Injunction.*

1. In an equitable action for the removal of an obstruction in a mill
   race, which is alleged to interfere with the plaintiffs' right to draw
   a certain quantity of water therefrom, the defendants cannot set
   up a counterclaim for damages on account of the plaintiffs'
   wrongful use of a greater quantity of water than they were en-
   titled to, and to enjoin them from such wrongful use, although it
   is alleged that the obstruction was erected and maintained for the
   purpose of preventing such wrongful use; nor can the defendants,
   upon such facts, by way of counterclaim, demand judgment legal-
   izing the maintenance of the obstruction.
2. Where a partition judgment has prescribed the method in which the
   respective parties interested in a water power shall use the water
   therefrom, the parties must abide by such method until it is
   changed by the court, and the maintenance of gates or weirs by
   one party for the purpose of controlling or using the water in a
   different way, may be enjoined.

APPEAL from the Circuit Court for *Jefferson* County.
The case is thus stated by Mr. Justice TAYLOR:

"The material allegations in the complaint are that the
plaintiffs were the owners of a certain block of land in the
city of Watertown, with the flouring-mill situate thereon,
and that as such owners they had the right to have a cer-
tain quantity of water, viz., 700 square inches of water,
under a certain head, flow through a race or water-way from
the dam across Rock river in said city above said block and
mill, down to their said mill, free and unobstructed by any
gates or other structures in or across said race; and they
further allege that before the commencement of this action
the defendants wrongfully and unlawfully placed a substan-
tial frame-work across said race above the plaintiffs' mill and
below said dam, and placed in such frame-work gates, by
means of which they could stop the flow of the water

Mulberger and others vs. Koenig and others.

through said race and down to their mill; that at times they did, by means of such frame-work and gates, stop the flow of the water in said race to their mill, to their great damage; that the defendants threaten to continue said frame-work and gates in said race, and to control the flow of the water therein to the mill of the plaintiffs; and they demand judgment that the defendants be compelled to remove all such obstructions entirely from said race, and that they be perpetually prohibited and restrained from placing the same or any other obstruction in any part of said race, and from in any manner or by any means diverting or obstructing the flow of 700 square inches of water, or any part thereof, in said race from said dam to the mill of the said plaintiffs, and that the defendants pay to the plaintiffs the sum of $5,000 damages, and costs of the action.

" The answer admits the right of the plaintiffs to have an unobstructed flow of 700 square inches of water through said race from the dam down to their mill; admits the putting in of the frame-work and gates; but denies that the frame-work or gates have at any time obstructed the flow of the 700 square inches of water to the plaintiffs' mill through said race, and allege as a reason for putting in said frame-work and gates that the plaintiffs had been drawing through said race, and using at their mill, a much larger quantity of water than said 700 square inches, in violation of the rights of the defendants, who, it is alleged, are entitled to the water flowing in said race in excess of the 700 square inches owned by the plaintiffs and certain other quantities owned by other persons not parties to this action, and that they put in said frame-work and gates so as to prevent the plaintiffs from drawing through said race to their mill any greater quantity of water than the 700 square inches to which they are entitled.

" The defendants also set up two counterclaims.   The

*first* sets out at great length the fact that the rights of the several persons having any interest in the water power created by the dam across the Rock river in said city were settled in an action in the circuit court of Jefferson county, to which all said persons were parties; and then alleging that the plaintiffs had violated the rights of the defendants, as they were fixed by said judgment, by drawing from said race and dam, for the use of their mill, large quantities of water in addition to the amount they were authorized by said judgment, or by any other right, to draw and use, to the damage of the defendants, in all, $15,000, and demanding a money judgment against the plaintiffs for the sum of $15,000. And, *secondly*, they set up the same facts in greater detail, and set out with great particularity the proceedings had in said action to settle and determine the rights of the several parties interested in said water power by the judgment of the court therein, and then allege that the plaintiffs had violated the provisions of said judgment by drawing a much larger quantity of water from said dam and race than they were authorized to draw by the provisions of said judgment, by reason whereof the defendants have been damaged in the sum of $15,000, and they demand judgment for said sum of $15,000, and also a judgment restraining the plaintiffs from drawing water from said race in any other way or manner than is authorized by said judgment, and also from interfering with the head-gates in said race or flume, or with the frame-work or gates placed by said defendants in said race or flume, and restraining the plaintiffs from interfering with the defendants' rightful control of said water and water power. To these counterclaims the plaintiffs demurred, on the ground that the causes of action stated are not pleadable as counterclaims to the plaintiffs' action. The circuit court overruled the demurrers to the counterclaims.

" Upon the pleadings and affidavits the plaintiffs moved the court for an injunction, pending the action, requiring the defendants to raise the gates complained of by the plaintiffs above the surface of the water in the race in controversy. This motion was also denied by the court, and from the orders overruling the demurrers to the counterclaims, and denying the temporary injunction, the plaintiffs appeal to this court."

*Harlow Pease*, attorney, and *S. U. Pinney*, of counsel, for the appellants.

*Daniel Hall* and *Geo. W. Bird*, for the respondents, contended, *inter alia*, that the causes of action set up as counterclaims arise out of the transaction set forth in the complaint as the foundation of the plaintiffs' claim. The word " transaction " as used in the statute means something more than the alleged wrongful acts of the defendants — the placing the frame-work and gates in the race. It means all the facts and circumstances creating the plaintiffs' cause of action — the facts they must prove to entitle them to recover. These facts are the existence of the dam, water power, and race, the flow of the water through the race, the rights of each party in and to the race and the use of the water, the amount of water each has used, and the obstruction. See *Ritchie v. Hayward*, 71 Mo. 560; *Vilas v. Mason*, 25 Wis. 321; *Harris v. Curet*, 9 Abb. Pr. (N. S.), 199. The counterclaims are, also, connected with the subject of the action. The subject of the action, within the meaning of the statute, is the water flowing in the race, the rights of the respective parties thereto, and their use of the water and race. See *Carpenter v. Manhattan L. Ins. Co.* 22 Hun, 49; *Glen & H. Mfg. Co. v. Hall*, 61 N. Y. 226; *McArthur v. G. B. & M. Canal Co.* 34 Wis. 139; *Cornelius v. Kessel*, 58 id. 237; *Ashley v. Marshall*, 29 N. Y. 494; *Thompson v. Kessel*, 30 id. 383; *Starbird v. Barrons*, 43 id. 200; *Isham v. Davidson*, 52 id. 237; *Akerly v. Vilas*, 23 Wis. 207.

TAYLOR, J.   We will first consider the demurrers to the counterclaims set up in the answer.

To determine whether the facts set up in the alleged counterclaims were pleadable as such in this action, depends upon the nature of the cause of action set up in the complaint.   Briefly, the claim of the plaintiffs, as set out in their complaint, is that they were entitled to draw a certain quantity of water through the race described in the complaint to their mill, and for the purpose of so doing were legally entitled to have the race entirely unobstructed in its entire capacity, both as to width and depth.   Their cause of complaint is that the defendants, in disregard of their rights, have placed an obstruction in said race by means of which they can and have obstructed the water in its flow through said race to their mill, as they have the right to have the same flow; and ask as relief that this obstruction be removed from the race.   Their cause of action is in equity, and the relief asked is equitable.   It is true, they allege damage by reason of the obstruction, and ask that the court, in granting the equitable relief to which they think themselves entitled, viz., the removal of the obstruction, will also award to them the damages they have suffered therefrom in the mean time.   These damages, however, are incident to the cause of action, and not the cause of action.   If the recovery of damages were the true cause of action, then the action would be an action at law and not one in equity.

If the counterclaims set up in the answer of the defendants in this action can be sustained as counterclaims, it must be under the following provisions of the statute in regard to counterclaims: " A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action," etc.   The plaintiffs' cause of action does not arise out of contract.   Their claim is that they have the right to have the water pass from the dam to their mill

through an open and unobstructed race, and that their rights have been violated by the defendants by placing an obstruction in such race, and thereby interfering with the unobstructed flow of said water; and the transaction out of which this cause of action arises is the wrongful act of the defendants in placing an obstruction in said race and stopping the flow of the water therein to their mill.

Now it does not need argument to show that the claim of the defendants against the plaintiffs does not arise out of the transaction which constitutes the plaintiffs' cause of action. Their cause of action, if they have any, arises, not out of the acts which constitute the plaintiffs' cause of action, but out of acts on the part of the plaintiffs done at a different time from the doing of the acts by the defendants which constitute plaintiffs' cause of action, and are in no manner connected with plaintiffs' acts, except that the defendants say that they did the acts complained of by the plaintiffs because the plaintiffs first did the acts complained of by the defendants. Now, if the defendants' reason for doing the acts complained of justifies them in doing such acts, then they are a defense to the plaintiffs' action; but as the acts complained of by the defendants do not arise out of such acts, but preceded them, they are not pleadable as a counterclaim under the first clause of the law above cited. The cases of *Heckman v. Swartz*, 55 Wis. 173, and *Scheunert v. Kaehler*, 23 Wis. 523, are conclusive upon this point.

Are the counterclaims set up by the answer of the defendants "connected with the subject of the plaintiffs' action" within the meaning of the second clause of the statute above quoted? We think not. What is the subject of the plaintiffs' action in the case at bar? Clearly it is the alleged wrongful acts of the defendants in unlawfully interfering with the plaintiffs' right to have the water flow unobstructedly through the race to their mill. The subject of the action is nothing more or less than the facts constituting the

plaintiffs' cause of action. See *Chamboret v. Cagney*, 2 Sweeny, 378; *S. C.* 10 Abb. Pr. (N. S.) 31; *S. C.* 41 How. Pr. 125; *Lehmair v. Griswold*, 40 N. Y. Super. Ct. 100; *Borst v. Corey*, 15 N. Y. 509. A counterclaim, in order to be allowed as such, under this last clause of the statute, must be connected with the facts constituting the plaintiffs' cause of action. The mere fact that the defendants set up acts on the part of the plaintiffs which are prejudicial to the rights of the defendants, and that they allege that these prejudicial acts on their part is the reason the defendants committed the acts complained of by the plaintiffs, does not constitute such a connection with the subject of the plaintiffs' cause of action as to make such acts pleadable as a counterclaim. To our minds there is no other connection between the acts of the plaintiffs set up as counterclaims by the defendants in this action, with the acts which constitute the plaintiffs' cause of action, than the connection in the minds of the defendants as a motive for doing the acts complained of by the plaintiffs. As a matter of fact, there is no connection between the two sets of acts, either in time or place. If these counterclaims are well pleaded in this action, then in every action for a tort the defendants may counterclaim other torts on the part of the plaintiffs neither arising out of nor connected with the tort set up in the complaint. This is clearly not allowable. *Akerly v. Vilas*, 21 Wis. 111; *Noonan v. Orton*, 30 Wis. 359; *Dietrich v. Koch*, 35 Wis. 618; *Scheunert v. Kaehler*, 23 Wis. 523; *Tallman v. Barnes*, 54 Wis. 181, 184; *Heckman v. Swartz*, 55 Wis. 173, 175; *Weatherby v. Meiklejohn*, 56 Wis. 74, 79. For the reasons stated we think the demurrers to the counterclaims were well taken, and it was error to overrule them.

The other question in the case arises on the order denying the motion for a temporary injunction asked by the plaintiffs. Whether this injunction should have been allowed or not, depends, in our judgment, upon the effect which should

be given to the judgment heretofore rendered by the circuit court for Jefferson county, for the partition of the water power in question between the parties interested therein, and fixing and defining the manner in which the respective parties in interest should draw and use the water from the pond and race in question. By reference to the said judgment in said partition suit, it will be seen that the court then determined how the respective parties should draw the water to which they were severally entitled from the pond and race leading therefrom on both sides of said river. The commissioners appointed to make the partition, among other things, reported to the court as follows: "And the commissioners further report and recommend the following plan for determining, drawing, and delivering to each one of the parties the quantity of water that they will severally be entitled to draw from each end of the dam to the mills below on each side of the river: *First*. That level marks be placed at the proper points, over and near the stationary weir at the head of the respective races, and hook-gauges be provided for measuring the depth of water on the said weirs, and by referring to a schedule prepared for the purpose, showing the number of cubic feet of water passing over said weirs on either of them, per minute, at any depth from one inch to two and a half feet, the quantity of water to be delivered may be definitely ascertained. *Second*. That adjustable weirs be constructed at suitable points along the main races or flumes, as may be found most convenient, for passing the water that each party is entitled to draw from the main race or flume into such flumes or races as may be prepared to receive it, and that all the water used by any party be made to pass over his weir before being used, and that the adjustable weirs be so constructed and arranged that they can be adjusted so as to pass over to each party the quantity of water per minute he may be entitled to receive from the main race or flume."

Upon confirming this report of the commissioners, the court, in its judgment, fixing the rights of the parties, entered another order upon the subject of weirs, as follows: "And it is further ordered and adjudged that the costs and expenses of erecting the two permanent and fixed weirs recommended to be erected at the dam by the said commissioners in their said report, to be constructed and erected for the purpose of dividing the said water power into two equal parts, be, and the same is hereby, apportioned to the said parties in this action ratably in the same proportion as the costs and expenses of the proceedings in this action have hereinabove been apportioned upon them respectively. And it is further ordered and adjudged that the costs and expenses of constructing and erecting such structures, weirs, and mechanical appliances as have been recommended by the said commissioners in their said report for the purpose of accurately admeasuring to the respective parties in this action the water to which said party is respectively entitled, and which may be necessary to be constructed and erected in order to carry this judgment into effect, shall be paid for by each of the said parties without any contribution from any other one of the said parties. And it is further ordered and adjudged that the said commissioners do proceed without any unnecessary delay to carry this judgment into effect, and that they report to this court, from time to time, their proceedings under this judgment, for the further order of the court thereon. And the said commissioners are hereby directed, in carrying this judgment into effect, to give due regard to the present place of drawing the water by any and all of the parties in this action, and not, in any case, to change the place of drawing the water, if practicable."

In pursuance of this order, the commissioners performed their duty in respect thereto, and on the 3d day of February, 1875, made a report showing that they had caused to

be constructed the two permanent weirs in said dams, stating particularly the manner of their construction, and how they should be used, and that as to the owners of the water on the east side of said river they had constructed for the different owners adjustable weirs as follows:

" For Milton Blanchard, in his flume before his wheels, of proper length to discharge over it a vein of water twenty-four feet in width, free from all contractions; they have erected for Herman Miescke an adjustable weir before his wheel, of proper length to discharge over it a vein of water twenty-three 58-100 feet in width, free from all contractions; they have erected an adjustable weir for defendants John L. Smith and Joseph B. Bennett, before their wheel, of proper length to discharge over it a vein of water sixteen 53-100 feet in width, free from all contractions; and they have erected an adjustable weir for defendants Frederick Miller and Jonas H. Sleeper, before their wheels, of proper length to discharge over it a vein of water thirty feet in width, free from all contractions. All the adjustable weirs on the east side are so constructed that the lowest point to which the crest of any of them can be brought, is eighteen inches below the crest of the main weir. They may be raised to a point level with the top of the dam, except defendant Blanchard's weir, which can be raised only to a point twelve inches below the level of the top of the dam. Defendant Blanchard owning the surplus water on the east side, it was not deemed necessary to construct his weir to be raised any higher. The adjustable weirs on the east and west side are all constructed alike; the level marks are all on the same elevation, and the mode of measurement of water is the same on all, and they are so constructed that all the parties will receive the respective quantities of water to which they may be entitled, on a level line six inches below the crest of the main weir. All the adjustable weirs must be set far enough below this level line to give the

proper quantity of water the respective parties may be entitled to at the time the weirs are set, and each weir must have a fall of six inches from the crest of the weir to the surface of the water below, in order to accurately measure the quantity. In case there is a surplus of water in the river after the several parties have received their full quantities, it will not be necessary to keep the above level line six inches below the crest of the main weir, but keep a fall over the main weir of six inches between the surface of the water in the dam and the surface of the water in the race or flume below the main weir; and in order that the parties entitled to draw the surplus water may receive the full benefit from the same, the parties entitled to the preferred water must raise their own private weirs and adjust them so as draw the proper quantity they are entitled to, that the surplus may flow to the parties having the right to the same. The commissioners have instructed all the parties how to set and operate their weirs, and also how to measure the water over the main weirs. In case serious differences should hereafter arise between them in respect to operating the weirs or the measurement of the water, they would recommend the appointment of a commissioner to take charge of and operate them."

The adjustable weir designated as the one belonging to Miller and Sleeper, is now the one owned by the plaintiffs in this action, and Blanchard's weir is the one now owned by the defendants herein; and the defendants are also entitled to any surplus water there may be on the east side of the river after first supplying the quantity of water owned by plaintiffs and others mentioned in the proceedings therein. It also appears that the race from the dam down to the plaintiffs' mill, on block 40, was constructed as it now is as early as 1872, and was an open race from the dam down to the plaintiffs' block 40, having no obstructions of any kind therein at the time the permanent and adjustable weirs were

caused to be constructed by the said commissioners, and the manner of using the same confirmed by the said court, in the partition action above referred to. It will be seen, by an examination of the reports of the commissioners, that it was supposed by them, and also by the court which confirmed their report, that the permanent weir in the dam on the east side thereof, and the adjustable weirs then constructed upon the open race, when used as directed in the report of the commissioners, would protect the rights of all the parties interested. If they would fairly protect the rights of all parties if used as directed, then it would seem very clear that the defendants should, if their rights had been violated by an unauthorized use of the weir of the plaintiffs at their mill, have proceeded upon said judgment to have enforced the lawful use of said weir by the plaintiffs, and in that way have protected their rights, and they would not be justified in taking the law in their own hands and enforcing their rights by placing an obstruction in said race not authorized or contemplated by the commissioners or the court in the judicial proceedings for the protection of the rights of all concerned.

It seems to us very clear that the judgment of partition, by a clear inference, required the race from the dam past the several weirs of the parties rightfully entitled to draw water from the same, should remain clear and unobstructed by any one, and that the court and commissioners supposed such weirs, when used as directed by such judgment, would protect all parties. And to our minds it is not a sufficient answer to this proposition that the defendants say that the obstruction they have placed in the race is not intended to be so used by them as to interfere with the rights of the plaintiffs to the water in said race. The obstruction is so constructed that it can be readily used so as to destroy the rights of the plaintiffs; and, being under the absolute control of the defendants, it is a constant threat of destruction

to the rights of the plaintiffs. It is enough that the court has determined that such obstruction was not necessary to the protection of the defendants' rights, and they cannot, therefore, lawfully maintain it in the race. To our minds the defendants have but three methods of protecting themselves under the judgment of the court: *First,* to commence an action founded upon the judgment to restrain the plaintiffs from the unlawful use of their weir, and, as incidental thereto, to recover damages for such unlawful use; *second,* an action at law to recover damages for the unlawful use of the water in the race by the plaintiffs; and, *third,* if they deemed the means for protecting the rights of the several parties interested in the water power, as determined upon by the commissioners and the court, inadequate for their protection as the owners of the surplus water in said river, they might make application to the court, upon the foot of the former judgment, in the nature of a bill of review, asking the court to modify the judgment, and for the appointment of a new commission of experts to fix upon some more adequate means of protecting their rights.

The court, in the partition judgment, having prescribed the method of using the water from the race in a manner which it supposed would best protect the rights of all parties, the parties must abide by that method until it is changed by the court, and one party cannot be allowed to interfere with the use of the water in a manner different from that prescribed, because he considers himself aggrieved by the regulation adopted by the court, and deems some other method better adapted to the purpose. We think the placing of the frame and gates in and across the race, between the dam and the mill of the plaintiffs, was unauthorized by the judgment in the partition action, and that the plaintiffs are entitled to have the same removed, and consequently to a temporary injunction pending the action. By this we do not intend to intimate that the arrangement made by the

Mulberger and others vs. Koenig and others.

partition judgment is the best that could be made for the protection of the interests of all the parties, and especially for the protection of the defendants in their rights to the surplus water. It seems to us that the objection made by the plaintiffs to the defendants' putting in the race a means of regulating the flow of the water, exclusively within their own control, may be raised against permitting the plaintiffs to maintain a weir at the lower end of the race, exclusively within their control, by which they can at will deprive the defendants of the surplus water they are entitled to, and pass it through the wheel of the plaintiffs' mill, to the injury of the defendants; but, however that may be, all parties must abide by the judgment until it is modified by the court that rendered it, upon a proper application, and after bringing all parties interested before the court upon such application.

In holding that the defendants cannot, in this action by the plaintiffs to prevent them from maintaining an unlawful obstruction in said race, counterclaim for injuries sustained by the defendants from the unlawful acts of the plaintiffs in using water which belongs to the defendants, and to enjoin them from such unlawful use in the future, and that they cannot by way of counterclaim demand the judgment of the court legalizing the maintenance of such obstruction, we do not determine that they may not maintain an action against the plaintiffs, based upon the judgment of partition, to recover damages for any unlawful use of the water in said race, and to enjoin any such unlawful use in the future; nor do we hold that the defendants may not, upon a proper application to the court, and showing the necessity therefor, obtain a modification of the partition judgment, so as to more effectually protect their rights in said water power. The objection to any modification of the judgment in this action is apparent from the fact that all the parties interested in such modification are not before the court. If any

structure is to be maintained in and across said race at or above the defendants' mill, certainly all parties entitled to use any of the water in said race below said mill are interested in that matter, and should be made parties to the proceedings taken for that purpose.

*By the Court.*— The orders of the circuit court appealed from are reversed, and the cause is remanded for further proceedings according to law.