Brown vs. Cohn and another.

Brown, Respondent, vs. Cohn and another, Appellants.

October 30 — November 13, 1894.

*Ejectment: Counterclaim: Facts constituting legal defense: Tax titles: Forged redemption receipts: Practice: Setting aside stipulation waiving jury trial.*

1. In ejectment, facts which constitute a complete legal defense are not the proper subject of a counterclaim. Thus, defendants claiming under tax deeds cannot allege as a counterclaim that redemption receipts upon which plaintiff relies to defeat such deeds are forged and fraudulent, and have such receipts set aside or canceled as a cloud upon the title. The ejectment action would be followed by a judgment conclusive as to the title, and if plaintiff should discontinue defendants might at once bring an action to protect their title; or, if there is danger of the loss of testimony of material witnesses, they may proceed to perpetuate such testimony under the statute.

2. Redemption receipts not countersigned by the county treasurer as required by sec. 1167, R. S., are not evidence of redemption and, being void upon their face, do not constitute a cloud upon title which equity will interfere to remove, even though they might be used to corroborate evidence of actual payment of the proper sums for redemption.

3. A stipulation waiving a trial by jury was entered into upon the supposition that the case would turn substantially or wholly upon questions of law. Afterwards it transpired that questions of fraud and forgery would be tried, in respect to which charges of perjury were suggested. *Held*, that it was not an abuse of discretion to relieve the plaintiff from the effect of the stipulation, the defendants not being placed thereby in any worse position than before the stipulation was made.

4. The fact that defendants may not be able to get a fair trial in the county where the action is pending, on account of the influence and standing of the plaintiff and his relatives and friends, is not a reason for refusing to set aside such a stipulation and denying to plaintiff the benefit of a jury trial. The provisions for change of venue must be held a proper protection to defendants.

APPEALS from the Circuit Court for *Oneida* County. This is an action of ejectment in which the plaintiff had judgment for the recovery of the premises claimed, upon a

trial before the court without a jury, a jury trial having been waived by stipulation of the parties. This judgment was reversed on appeal (*Brown v. Cohn*, 85 Wis. 1, where the case is sufficiently stated), this court having held that the tax deeds under which the defendants claimed the premises were properly executed and valid tax deeds.

After the cause had been remanded for a new trial, the defendants made a motion, founded upon sundry affidavits and papers on file, for leave to serve and file an amended answer, setting up by way of counterclaim that the plaintiff makes a claim of title to the premises in question, adverse to the defendants, on the ground that he has paid and redeemed the lands from the tax sales of 1875 and 1876, upon which the said tax deeds were issued, and that by reason of such payment said deeds are void, and that he claims and pretends to hold tax or redemption receipts, in writing, signed by the county clerk of Lincoln county, showing the payment and redemption of said lands from such sales prior to the issuing of such deeds, and bases his claim to the title to said lands thereon; that such claim is false and fraudulent, in that in truth said taxes were never paid or redeemed, and that said pretended tax or redemption receipts, which purport to show the payment of such taxes, are false, forged, and fraudulent, and were never in fact executed or delivered by the county clerk of the county, or by any officer or agent thereof; that they purport to be signed by the county clerk of Lincoln county at the date thereof, and are in the ordinary and usual form of tax receipts issued by county clerks; that there was no record or any entry ever made of such pretended redemption by the county clerk in his office, or in any of the public offices of the county, or by any of the officers thereof, and that such receipts are not matters of record anywhere. It appeared that they had not been countersigned by the county treasurer, and that they were relied on by the

plaintiff as proof of the invalidity of the title of the defendants; and it was claimed that they ought to be delivered up and canceled, and plaintiff perpetually enjoined and restrained from claiming or asserting any title to said lands, or any right therein, under the same; that plaintiff had used them to harass and annoy the defendants, and had introduced them in evidence on the former trial to show redemption of the lands in question; and that after the trial was closed, and their false and fraudulent character discovered, and a motion made for a new trial on account thereof, the plaintiff withdrew said receipts from the evidence, but that he intends in the future, and at the next trial of this action, to assert title through and by means of such receipts.   It is alleged that witnesses who can testify, as to their false and fraudulent character may die or leave the jurisdiction of the court, so that defendants' ability to show their true character may be greatly impaired unless the relief prayed for in the counterclaim is granted.   It is further alleged that, as to a certain tax deed of a portion of said premises to one C. J. Winton, the plaintiff claims such deed to be null and void, because of the action commenced by him to annul the tax sales and restrain the issuing of a tax deed thereon; that said Winton was not a party to said action, and did not know of the pendency thereof, or of the injunctional order therein, at any time; that he obtained title to the certificates prior to the commencement of the action, and applied for and obtained said tax deeds without any knowledge of the proceedings in said action, and that no *lis pendens* or notice of the object and pendency of said action had been filed.   The defendants demanded judgment establishing their claim of title to said lands against any claim of the plaintiff thereto, and that he be forever barred from claiming or asserting any right or title thereto adverse to the defendants, and that he surrender and release his title to them, and deliver up to the

court the pretended tax or redemption receipts, that the same may be canceled, and for general relief.

The court made an order denying the application to so amend the answer, from which the defendants appealed.

At the same term the plaintiff moved the court that he be relieved from the stipulation waiving a trial by jury therein, and that the issues therein be tried by a jury, founded upon the affidavit of one of the plaintiff's attorneys, to the effect that the only questions to be litigated and in contemplation of plaintiff and defendants when said stipulation was made were three certain questions of law, namely: (1) Whether said tax deeds by virtue of which the defendant *Cohn* claimed title were void on their face; (2) whether two of said deeds were not rendered void by the payment of the money to the county clerk, as evidenced by the redemption receipts issued by him, but not countersigned by the county treasurer; (3) whether the third tax deed was not void by reason of its having been issued in violation of the injunctional order of the court,— and that said stipulation was made solely on the belief of the plaintiff that these were the only issues to be presented for determination; that, after the trial of the cause, divers affidavits had been filed on behalf of the defendant to open the case for further trial, charging that said receipts were forgeries, and the money to redeem the said lands had never been paid; that the plaintiff thereupon obtained leave to withdraw all evidence in relation to the payment of said money and said receipts, and then rested his case solely upon the validity of the tax deeds as they appeared upon their face; that the trial of the issue in respect to these matters would require the testimony of divers and numerous witnesses as to the genuineness of the signatures to said receipts, and as to whether they had been altered or changed by the plaintiff or his agents since issued, if ever issued; and that plaintiff desires such issues to be tried

by a jury, and that the stipulation waiving trial by jury be vacated.

The affidavits of the defendant *Cohn* and two of his attorneys were read in opposition, stating, in substance, that the action is peculiarly the subject of equity jurisdiction and cognizance, and the questions of law and fact in it so intimately blended, with reference to the Winton tax deed, that neither party could have adequate and full relief by a jury trial; that the issue made upon the two pretended redemption receipts could not be fully and fairly tried by a jury, and that the defendants would claim, and offer evidence to show, that such receipts are forgeries, and the plaintiff never did pay or redeem from said taxes; and in support of this contention it is stated that they will require at the trial the sales books from the office of the county clerk and county treasurer of Lincoln county for every year from 1875 to 1883, and the stub receipt books from the office of said county clerk, and that a vast amount of record evidence of this kind will be offered to show that the disputed receipts are forgeries; that these proofs and the forged receipts will have to be separately and carefully examined, some of them with a microscope, and that such examination will necessarily extend to many thousand items of written evidence, and take several days' time; that it would be impracticable and impossible for a jury to go through these matters of testimony and make the proper comparisons and examinations; that the real reason for plaintiff's application to vacate the stipulation is not that a jury is the most fit and appropriate tribunal before which to try the case, but because the action is pending in Oneida county, having little or no population outside of Rhinelander, the county seat, and the small stations along the railroad that passes through it; that, of the 4,000 inhabitants, about 3,500 reside in Rhinelander. The affidavits detail that the plaintiff has conducted and carried on a num-

ber of business enterprises in Rhinelander for the last six
years, and show that he has three sons and a son-in-law
largely engaged in various business enterprises in said vil-
lage and county; that they have a large circle of friends
and business acquaintances, and are men of influence and
wealth, and control the social, business, and political life
and affairs of said village and county; that they own and
operate a bank there, and own nearly all the stock of the
Pelican Boom Company, organized for the purpose of raft-
ing, booming, and driving logs on the river, and it handles
annually about 80,000,000 feet of logs and timber; that the
sawmills in the village, owned by various parties, are de-
pendent on the boom company for handling and sorting
their logs each year; that said *Brown* and his sons own a
large sawmill in the village, and have a part or the entire
ownership of the waterworks and electric light plants, and
are engaged in other business enterprises; and that for
these and other similar reasons it would be impossible for
the defendants to secure a fair trial before a jury in that
county, and to vacate the stipulation would render it im-
possible for them to secure a just and impartial trial.

The court made an order vacating the stipulation waiv-
ing trial by jury, from which the defendants appealed.

For the appellants there were briefs signed by *Brown &
Pradt* and *H. C. Hetzel*, and oral argument by *Neal Brown*.

For the respondent there were briefs by *Raymond, Lam-
oreux & Park*, and oral argument by *B. B. Park* and *John
Barnes*.

PINNEY, J.    1. This action is strictly a legal one for the
trial of the question of title to the lands in dispute.    The
defendants seek to set up by way of counterclaim, in sub-
stance, that the certificates of redemption on which the
plaintiff relies to defeat two of the tax deeds under which
the defendants claim title to the premises are false, forged,

Brown vs. Cohn and another.

and fraudulent, and that they constitute a cloud and claim upon and against the defendants' title to the lands in question; and they ask judgment that the receipts be delivered up and canceled, and their title to the lands be quieted and established as against the claims of the plaintiff. There can be no doubt whatever that the defendants, under their original answer, could avail themselves of, and give in evidence, all the matters set up in their so-called counterclaim. Their defense at law in these respects is perfect. But they insist that they have a right to plead these facts by way of counterclaim, and obtain the affirmative relief prayed for, inasmuch as the plaintiff may, as of course, dismiss his legal action, and prevent a judgment that would be conclusive upon the title to the lands, and thus leave their title or claim of title subject to the hostile claim and cloud cast upon it by the plaintiff's claim and his alleged false and forged receipts or certificates of redemption.

It seems to be well established that a counterclaim based upon the same facts which constitute a complete legal defense cannot be maintained. *Page v. Kennan*, 38 Wis. 320, 324; *Lawe v. Hyde*, 39 Wis. 345, 354; *Pennoyer v. Allen*, 51 Wis. 360. A court of law, wherein the right of trial by jury is secured to the parties, is the appropriate tribunal and the proper forum for the trial and determination of questions of title to lands. *Page v. Kennan, supra*. Fraud is an original ground of jurisdiction in equity; but courts of law exercise a concurrent jurisdiction on this ground with courts of equity in very many cases, and it is a general rule, as between different tribunals having concurrent jurisdiction to administer and grant relief, that the one first acquiring jurisdiction will continue to retain it to the end. The defendant in an action of ejectment cannot, by setting up a legal title by way of counterclaim, or by attacking in that manner the title of the plaintiff on the ground of fraud, transfer the trial of the cause, so to speak, to the

equity side of the court, and make the action one of equitable cognizance instead of a legal action triable by jury, if there is no other subject or peculiar ground of equitable cognizance. If the contention of the defendants is maintainable, nearly every action for the recovery of real estate could, by mere form of pleading, be made cognizable in equity, and the plaintiff be thereby deprived of a trial of his action by a jury.

The statute in relation to pleading defenses in actions of ejectment (sec. 3078, S. & B. Ann. Stats.) provides that "the defendant may demur to or answer the complaint, as in personal actions; he may also in his answer set up any matter as a defense which would have heretofore formed an *equitable* defense, in which case the answer shall contain a demand for such judgment as he claims." An *equitable* defense may be of a character entitling the defendant to affirmative relief, or it may have a negative operation merely, protecting him from the plaintiff's claim or demand; but in either case, under this statute, the equitable defense must be pleaded as a counterclaim, and a court will give to it proper effect, affirmative or negative, as the case may require. *Weld v. Johnson Mfg. Co.* 86 Wis. 551. In this case an equitable defense, not pleaded as a counterclaim, was held bad on demurrer, while the same matter in a case between the same parties, pleaded as a counterclaim, was held good on demurrer, and a negative or defensive effect accorded to it to defeat the plaintiff's action. *Weld v. Johnson Mfg. Co.* 86 Wis. 552. The matters set out in the proposed counterclaim constitute only defenses *at law* to the plaintiff's claims of title, and not *equitable* defenses, within the proper sense of the term, and are not, therefore, the proper subject of counterclaim in the action; nor is there any reason why they should be so esteemed. An action of ejectment, instead of being a mere possessory action, as at common law, allowing a defeated and ousted

defendant to turn around and maintain a new action of ejectment against his opponent, is, by force of the statute (S. & B. Ann. Stats. sec. 3088), followed by a judgment "conclusive as to the title established therein, upon the party against whom it is rendered, and upon all claiming from, through, or under him by title accruing after the filing of a notice of the pendency of the action," etc., subject to certain exceptions not material to the present case. It binds the party against whom it is rendered, and those in privity with him. *Smith v. Pretty*, 22 Wis. 655; *Wolf River Lumber Co. v. Brown, post*, p. 638, and cases cited.

It is true, also, that, upon substantially the grounds set up in the proposed counterclaim, the defendants, if the plaintiff had not brought his action, might have brought their original action, if in possession, against the plaintiff, to cancel the receipts or certificates and compel him to release his claim of title, if in other respects they could bring themselves within the statute on this subject (R. S. sec. 3186); and if not in possession, and the plaintiff should dismiss his action, they could at once bring ejectment against him, or other appropriate action to protect their title, if they can establish it against his claim of title to the premises. R. S. sec. 3075. Besides, if any danger exists of the loss of testimony of material witnesses, the defendants could proceed to perpetuate their testimony, as provided by statute; and in any event, if the plaintiff dismissed his action, they would not be more unfavorably circumstanced than before it was commenced. It is evident that the fact that the plaintiff may at will discontinue his action furnishes no ground for holding that the pleading tendered is available as a counterclaim.

2. The so-called tax receipts or certificates of redemption are in the usual form of such certificates, but were not countersigned by the county treasurer of the proper county. By the statute (R. S. sec. 1167), by virtue of which alone,

they could become legal evidence of redemption, it is pro-
vided that such a receipt "before it shall be evidence of
such redemption shall be presented to the treasurer of the
same county, and be countersigned by him." The receipts
could not be legal evidence of the redemption of the lands
described in them, and, being void on their face, could not
constitute a claim of redemption or cloud upon the title
which a court of equity would interfere to cancel or set
aside, for their invalidity would necessarily appear when-
ever they might be produced. *Meloy v. Dougherty,* 16 Wis.
269; *Ferson v. Drew,* 19 Wis. 225; *Cornish v. Frees,* 74
Wis. 495; *S. L. Sheldon Co. v. Mayers,* 81 Wis. 632; *Com-
mercial Bank v. Fire Ins. Co.* 84 Wis. 18. Probably the
receipts may be used on the trial to corroborate the plaint-
iff's evidence that he actually paid the proper sums to re-
deem the lands from the tax sales described in them, or to
contradict the officer to whom it is said the money was
paid, should he deny that he received it; but a resort to a
court of equity to cancel or set them aside merely because
they might be used for such a purpose would be not only
unauthorized, but an unheard of proceeding. The ques-
tions in respect to the Winton tax deed are legal questions
arising upon the record of the injunction suit to which he
was not a party, and upon such proof of redemption from
the sale upon which the deed was founded as the plaintiff
may be able to produce. The circuit court rightly denied
the motion for leave to interpose the proposed counter-
claim.

3. Stipulations entered into in relation to the manage-
ment and conduct of an action by an attorney are binding
upon his client, and cannot be set aside or disregarded at
his mere caprice or option. The court, however, may, upon
proper cause shown, relieve a party from the effect of a
stipulation, or set it aside; and what is proper cause is
matter of discretion with the court, the exercise of which

will not be interfered with on appeal, unless this discretion has been abused.   It is plain that the stipulation waiving a trial of the action by a jury was made when it was supposed that the trial involved no difficult or disputed questions of fact and that the case would turn substantially or wholly upon questions of law.   Subsequently it was ascertained that questions of fraud and forgery were involved and are to be tried, and in respect to which charges of perjury were suggested at the argument.   While we would not have been inclined to reverse the order had the plaintiff's motion been denied, yet, in view of the facts and circumstances disclosed, we hold that the granting of the motion was within a fair exercise of judicial discretion.

The fact that the defendants may not be able to get a fair trial in the county where the action is pending, on account of the influence or standing of the plaintiff and his relatives and friends, furnishes no reason for denying the plaintiff the benefit of a trial of the action by a jury.   The statutory provisions for change of place of trial must be held to be a proper protection, as well in this case as others, to the rights of a party against the effect of all such prejudicial influences.   There is nothing to show that the defendants, by reason of the order setting aside the stipulation, will be placed in a worse position than before it was made.   The circuit court did not err in vacating the stipulation and restoring the parties to their former position.

*By the Court.*— The orders of the circuit court appealed from are both affirmed.