Telulah Paper Company, Appellant, vs. Patten Paper Company, Limited, Respondent.

*May 23—June 20, 1907.*

*Pleading: Counterclaim: "Connected with the subject of the action:" Injunction: Excessive use of water power: Parties defendant.*

1. Where the facts stated in the counterclaim are such as will defeat or diminish plaintiff's recovery of damages or compensation and are also such as entitle defendant to affirmative relief against plaintiff, they have a sufficient connection with the subject of the action, within the meaning of sec. 2656, Stats. (1898), although such affirmative relief may be, in itself and considered apart, not connected with all the relief sought by plaintiff.
2. Where the facts stated in the counterclaim arise out of the contract or transaction set forth in the complaint as the foundation of plaintiff's action, or are connected with the subject of the action, and are such as entitle defendant to affirmative relief against plaintiff, it is no objection to their being pleaded as a counterclaim that they are also available as a defense to plaintiff's claim.

3. The owner of a water power made various partial grants of it, some to defendant and some to others to whose rights defendant succeeded. Plaintiff, successor in title to the residue of such power, alleged that defendant was drawing more than its share of the water, thereby diminishing the residue belonging to plaintiff, and prayed that the volume of water to which defendant was entitled be adjudged, that defendant be restrained from using more than its share, and that plaintiff have damages for past excessive use by defendant. Defendant by counterclaim set up other partial grants of power from the original owner to which defendant succeeded and alleged that plaintiff was drawing water in excess of its share, that it was using a part of the water at a place where more was required to produce the power, thereby diminishing the volume of water to which defendant was entitled, and by discharging its water in the wrong place forced defendant to take a much greater quantity of water than would otherwise be necessary to produce its power, and prevented defendant from using the full volume of water to which it was entitled, and asked substantially the same relief against plaintiff as plaintiff asked against defendant. *Held*, that the cause of action so stated was pleadable as a counterclaim.

4. In an action by one claiming as grantee of the owner of the residue of a water power, seeking to have adjudged the volume of water to which defendant, one of the grantees of a part of such power, is entitled, and to have such defendant restrained from drawing more than its share of water, and to recover damages for defendant's past excessive use of water, prior grantees of other parcels of the water power, while proper, are not necessary, parties defendant.

APPEAL from an order of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Modified and affirmed.*

The appeal is from an order overruling a demurrer to the counterclaim, and also overruling a demurrer to a certain portion of defendant's answer designated in the demurrer as a plea in abatement.

For the appellant there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

*Geo. G. Greene,* for the respondent.

TIMLIN, J. The demurrer to the counterclaim is upon the ground that the cause of action stated is not pleadable as a counterclaim, and it was conceded that therein a cause of action in favor of the defendant and against the plaintiff is stated, but, it is argued, one not "connected with the subject of the action." The complaint shows that August 27, 1864, Edward West, then the owner of the water power described, conveyed to one Woodward a parcel of contiguous land, "said premises embracing fifteen feet of the south end of the bulkhead together with the privilege of drawing from said bulkhead as much water as Woodward, his heirs or assigns, may need for whatever machinery may be erected on said premises." It is averred that the proper construction and measure of the aforesaid grant of parcel of said water power is not to exceed 6,480 cubic feet of water per minute. The defendant succeeded to and is the owner of the rights of Woodward, and under a wrongful claim founded thereon is drawing and using a much larger volume of water. West thereafter and before June 18, 1887, conveyed different parcels of said water power to other persons and to defendant, and on the date last mentioned conveyed the remainder of said water power, with all his then interest in the dams and canals maintaining and furnishing said water power, to the plaintiff's grantor, who conveyed to plaintiff, who now owns and holds the same. Plaintiff has mills in operation which require the use of all the remainder of such water power, and the plaintiff's residue of the water power is diminished, to plaintiff's damage and injury, by said excessive use on the part of defendant.

A second cause of action avers, among other things, a grant by West, October 20, 1879, to one Flemming of so much water as not to exceed 200 horse power, on July 16, 1881, to one Patten of water to the amount of 400 horse power, both of which rights came to and are owned by defendant. On February 26, 1882, there was a grant by West to defendant

of water to the amount of 100 horse power.   Under these
grants the defendant has been and is drawing and using a
much larger volume of water than sufficient to furnish 700
horse power, thereby also diminishing the plaintiff's residue
of the water to the plaintiff's damage and injury.   Relief de-
manded is that the volume of water which the defendant is
entitled to use be adjudged, that defendant be enjoined from
drawing or using more, and that the plaintiff have damages
or compensation for the past excessive use by defendant.

The counterclaim described the water power as produced
from a mill pond held by a dam across the north channel
and a bulkhead across the south channel of Fox river, and a
canal from that point extending down through Grand Chute
Island about 1,600 feet.   It then avers a grant January 1,
1859, by West to one McCaughey of 120 horse power, the
grant to Woodward mentioned in the complaint, a grant De-
cember 23, 1867, by West to Jerrard et al., 30 horse power,
a grant April 15, 1869, by West to Tibbits, 75 horse power,
in all 675 horse power, and the water necessary to produce
this horse power must be taken from the said pond and dis-
charged into the south channel, and all these grants are now
owned and held by defendant.   It requires 28,000 cubic feet
of water per minute to produce the 450 horse power which
defendant is entitled to under the Woodward grant.   Since
1882 defendant acquired and owns the grants aggregating
700 horse power described in the complaint, but of this horse
power it needs not more than 600 horse power, and the
counterclaim states the volume of water necessary to produce
this.   It is then averred that on April 5, 1870, West con-
veyed to the Appleton Iron Company a tract of land at the
lower end of said canal with a grant of water power which is
equal to 372 horse power, and which was necessarily dis-
charged into the north channel.   After the conveyance of
June 18, 1887, under which plaintiff claims and which is
referred to in the complaint, the use of water power on the

tract conveyed to the Appleton Iron Company was discontinued. The plaintiff, however, having only these two grants or rights, namely, that secured under the grant of the residue June 18, 1887, and that formerly held by the Appleton Iron Company, discharges all its waste water from its mills into the south channel. Besides said grants West had granted 270 horse power to other persons, 160 horse power of which was prior to defendant's grants. Prior to June 18, 1887, the total grants by West aggregated 2,000 horse power. The flow of the river is more than sufficient to fill all the grants of power owned by defendant at the bulkhead and the 160 horse power aforesaid prior to defendant's grants, but except in very high water is and ever has been insufficient to fill all the grants by West made prior to June 18, 1887, and the plaintiff draws and uses water in excess of what it is entitled to, thus depriving the defendant of power both at the bulkhead and on the canal. Using the water power granted to the Appleton Iron Company (which, as we have seen, was 372 horse power, and was prior to two or three of the grants under which defendant claims) at the place where plaintiff uses it requires more water to produce the 372 horse power than if it were used at the place specified or required by the grant to the Appleton Iron Company, and so diminishes to that extent wrongfully the volume of water to which defendant is entitled. And further, discharging the water into the south channel, as plaintiff does, instead of into the north channel as required by the Appleton Iron Company's grant, raises and sets back the water in the south channel and so diminishes defendant's head of water at the bulkhead and so requires the use of a much greater volume of water by defendant to produce the power to which it is entitled by grant if conditions were such that it could produce that power, but this condition also prevents defendant from using its full power to which it is entitled. These conditions are alleged to have existed to defendant's damage and injury, which is

continuous or constantly recurring. Upon this counterclaim the defendant asks practically the same relief against the plaintiff as the plaintiff does against defendant.

The question of the sufficiency of the second count in the complaint as against this demurrer was not argued, and we will assume, as counsel did in their briefs and arguments, that each count of the complaint states a good cause of action, and, as the demurrer does, that the only question is whether or not the cause of action in defendant's answer is pleadable as a counterclaim. Nor do we find it necessary to determine whether the equitable cognizance of this action is to be upheld under the *quia timet* jurisdiction of that court, or under the inadequacy of legal remedy which is the basis of the jurisdiction in partition, for both parties are in equity appealing to the remedies of that court and not questioning its jurisdiction. But considering the controversy from the broader viewpoint of a "civil action," are there any facts averred in the counterclaim which connect it with the subject of plaintiff's action? The subject of plaintiff's action is his right and the invasion of that right by the defendant. In *Mulberger v. Koenig,* 62 Wis. 558, 22 N. W. 745, it was said: "The subject of the action is nothing more or less than the facts constituting the plaintiff's cause of action." In *Grignon v. Black,* 76 Wis. 674, 45 N. W. 122, 938, a suit to enjoin the defendant from committing waste on certain premises in which there was a counterclaim on the part of the defendant in possession to quiet his title to the same premises, the court said:

"The subject of the action of the plaintiffs in this case, as stated in their complaint, is their title and right of possession to the land in question; and the defendant's counterclaim sets up the same subject of the action, viz., the title and possession to the same land."

There is nothing inconsistent in these expressions. The last merely falls short of a complete definition. A cause of

action is inconceivable separately from the rights which it invades, and a legal right is inconceivable separately from possible infractions of that right. A legal right or title in this aspect is the privilege found in law against certain acts or omissions on the part of others. It is not always a good objection to a counterclaim that the facts there pleaded are also available as a defense. If the facts pleaded as a counterclaim are of a nature to entitle the defendant to the affirmative remedy of injunction, they will, if they arise out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or if they are connected with the subject of the action, constitute a good counterclaim, notwithstanding they are also available as a defense to the plaintiff's claim. *Scott v. Menasha,* 84 Wis. 73, 54 N. W. 263. In the last-mentioned case an action was brought against a town upon interest coupons formerly attached to its municipal bonds. The counterclaim stated facts showing that the bonds, and consequently the coupons, were invalid, and that the plaintiff owned and held the bonds as well as the coupons sued on. This same matter was also pleaded as a defense. This certainly was defensive matter, but the court ruled that it was also ground for a counterclaim asking the cancellation of the bonds and that the plaintiff be enjoined from transferring the bonds to innocent purchasers. The same facts may constitute a defense and a counterclaim in the same action. *McArthur v. G. B. & M. C. Co.* 34 Wis. 139; *Rood v. Taft,* 94 Wis. 380, 69 N. W. 183; *Pelton v. Powell,* 96 Wis. 473, 71 N. W. 887. At the same time facts available as a defense, but which entitle the defendant to none of the affirmative remedies of equity, cannot be pleaded as a counterclaim. *Commercial Bank v. Fire Ins. Co.* 84 Wis. 12, 54 N. W. 109. But where the facts arise out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's action, or are connected with the subject of the action, and are such as to entitle the defendant

to affirmative relief against the plaintiff, it is no objection to their being pleaded as a counterclaim that they are also available as a defense to the plaintiff's claim. *Scott v. Menasha, supra.* Where the facts constitute a defense to plaintiff's claim it can hardly be denied that they possess this statutory qualification for a counterclaim, viz., that they are connected with the subject of the action. *McArthur v. G. B. & M. C. Co., supra; Scott v. Menasha, supra.* Else how would they constitute a defense? For the same reason such facts necessarily possess the legal quality of defeating or in some measure qualifying the judgment to which plaintiff would be otherwise entitled. *Dietrich v. Koch,* 35 Wis. 618. It could hardly be expected that the defendant would be obliged to forego his right to the affirmative relief of injunction which he would be entitled to in a separate and independent action merely because the facts entitling him to that relief were also connected with the subject of the action as a defense to the claim of the plaintiff. In *Wilson v. Hooser,* 76 Wis. 387, 45 N. W. 316, where the plaintiff as lienholder brought an action under sec. 3186, R. S. 1878, to establish the validity of his lien as against the defendant in possession under a title which defendant claimed to be paramount to plaintiff's lien, the defendant in possession counterclaimed under the same statute against the plaintiff, thereby seeking to have the plaintiff's alleged lien declared void and canceled as a cloud on defendant's title. The plaintiff demurred to the counterclaim because not pleadable as a counterclaim. The court held the counterclaim good, hence held that it was connected with the subject of the plaintiff's action, and hence necessarily held that matter which was also defensive was good as a counterclaim when the defendant was otherwise entitled to affirmative relief thereon.

We quote from the opinion (page 391, 45 N. W. 317):

"The argument is that a mere defense to the plaintiff's cause of action would afford the defendant all the relief that he can obtain under his counterclaim, and therefore the

counterclaim is wholly unnecessary. It is also argued that the counterclaim does not contain any new matter not set up in the complaint, and therefore is not well pleaded as a counterclaim. We cannot agree with the learned counsel in either of his contentions. On pleading mere defensive matter to the plaintiff's complaint, the defendant could not obtain any final adjudication of his rights in the action, or the relief he is entitled to under said sec. 3186, R. S."

Sec. 3186 was since amended, as stated in *Sloan v. Rose,* 101 Wis. 523, 77 N. W. 895, so as to make a counterclaim under that section unnecessary by permitting the answer to contain the same averments and the final judgment to give equivalent relief, but this does not affect the value of *Wilson v. Hooser, supra,* as a precedent on the question of the construction of the counterclaim statute. Sec. 2656, Stats. (1898). The appellant cites *Brown v. Cohn,* 88 Wis. 627, 633, 60 N. W. 826; *Pennoyer v. Allen,* 51 Wis. 360, 361, 8 N. W. 268; *Lawe v. Hyde,* 39 Wis. 345, 354. These, however, were actions of ejectment, or actions governed by the ejectment statutes. Ejectment is a peculiar action in which the legal title to the present estate ordinarily carries with it the right to possession. The subject of that action is the plaintiff's right to possession and the acts of the defendant in denial or deprivation of that right, and the statutes contained a special provision relative to equitable defenses in such action. R. S. 1878, sec. 3078. Upon legal defenses the defendant would only be entitled to the statutory verdict and judgment and to no affirmative relief beyond that. *Lawe v. Hyde, supra.* "And, with a view of bringing together the legal title and the possession, an equitable defense can be made by counterclaim only." Id. The learned counsel for appellant, with characteristic candor, concedes in his brief on this appeal that the facts pleaded in this counterclaim are available as a defense against the cause of action set forth in the complaint, and also concedes that the defendant in an independent action would be entitled to the same or similar

relief thereon against the plaintiff as the plaintiff seeks in his complaint in this action. These concessions seem to us well authorized. But it also seems to us that facts available as a defense to the demand set forth in the complaint, and upon which the defendant in an independent action against the plaintiff would also be entitled to the affirmative relief of injunction, must be and are connected with the subject of the action within the meaning of sec. 2656, Stats. (1898), and also affect, qualify, or modify in part the recovery sought by the plaintiff. Counsel for appellant arrives at the opposite conclusion, only by considering that the relief by injunction asked for by plaintiff is not connected with the relief by injunction asked for by defendant. This, however, is not the test. Nor is it necessary that the connection of the counterclaim with the subject of plaintiff's action exist at every point of the relief sought by the plaintiff. It is a sufficient connection if, as in the present case, the facts constituting the counterclaim will defeat or diminish the plaintiff's recovery of damages or compensation and are also such as entitle the defendant to affirmative relief against the plaintiff, although such affirmative relief may be, in itself and considered apart, not connected with all the relief sought by plaintiff.

Upon the other branch of the case we do not consider that the averments of the answer show the other grantees of West to be indispensable parties to the action. *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 75 Wis. 385, 44 N. W. 638; *Grand Rapids W. P. Co. v. Bensley,* 75 Wis. 399, 44 N. W. 640. Nor from the viewpoint of plaintiff's complaint do we consider this an action for partition. The circuit court in its opinion filed in this case said, among other things:

"It occurs to me that the proper order to be made under the view taken of the matters raised by the demurrer is an order overruling the demurrer as to the counterclaim, making the persons named in the cross-complaint parties, and direct-

ing the service upon them of the cross-complaint and the complaint and of the summons and the order making them parties."

The order, however, which was actually signed overruled the plaintiff's demurrer to this part of the answer, which would have the legal effect of compelling the plaintiff to amend and bring in all of such former grantees of parcels of this water power. We do not think that the facts disclosed warrant any such order or the placing of any such obstruction in the way of plaintiff's asserting its rights against the defendant. The most that can be said of such prior grantees is that the answer shows them to be proper parties defendant. The evidence may involve an examination into how much was granted each one in order to determine the residue, but the decree will not necessarily, even in form, pass upon the rights of grantees of other parcels of the water. Again, the plaintiff's right as set forth in the complaint does not depend solely upon whether or not there is a residue not conveyed away by grants prior to June 18, 1887. It is averred that West was the owner of the water power, and that, with the grant last mentioned of the remainder, meaning residue, of the water power, there was granted all West's interest in the dams and canals maintaining and furnishing the water power. Without here placing a definite or final construction upon this language, we can say it is broad enough to admit proof that the plaintiff succeeded to the rights of West to restrain the defendant from taking and using more water than defendant was entitled to under its grants; that is to say, more water than is, under present conditions, necessary to produce the results in horse power and otherwise mentioned in defendant's grants.

The order appealed from should be affirmed so far as it overrules the plaintiff's demurrer to the counterclaim, with costs as therein specified and with leave to reply. But in other respects it should be modified so as to provide that the

defendant may, if it desires, bring in as parties defendant to this action the other grantees of parcels of this water power and serve upon them its answer and cross-complaint.

*By the Court.*—The order appealed from is modified and affirmed, with costs in favor of respondent.

KERWIN, J., took no part.