ADKINS, Appellant, vs. LOUCKS and others, Respondents.

*September 26 — October 12, 1900.*

*Attachment, when lies: Liability of heirs for debts of ancestor: Appeal: Order, when reviewable: Judgments: Fraudulent conveyances: Parties: Joinder of causes of action: Foreign guardian: Sale of ward's realty in Wisconsin: Limitation of actions: Nonresidents.*

1. The provisional remedy for the attachment of property under the statutes of this state is confined to actions at law to recover money due from the defendant upon contract.

2. An action to enforce the statutory liability of heirs for the debts of their decedent to the extent of property inherited by them from him is not an action on contract.

3. An order vacating an attachment of property is not reviewable on appeal from the judgment in the action. It must be reviewed on appeal from the order setting aside the attachment.

4. Save cases where interlocutory judgments are allowable under the special provision in sec. 2883, Stats. 1898, but one final judgment is permissible in any action. In that the rights of all the parties must be adjudicated.

Adkins vs. Loucks and others.

5. If a person convey property in fraud of others who are entitled to resort to it for the collection of their claims, and the vendee retain part of the consideration and part of it be paid to and retained by a third person as trustee for the vendor, and both be guilty participants in the fraud, all are proper parties defendant in an action to enforce the right of such person to a satisfaction of his debt out of the property conveyed.

6. The test of whether more than one cause of action is stated in a complaint is whether more than one principal subject of action or primary right is presented by the pleading for adjudication.

7. In an action to enforce the right of a creditor to payment of his claim against the estate of a deceased person out of the property of such person in the hands of his heirs under sec. 3274, Stats. 1898, a fraudulent vendee of such property is a proper defendant, and likewise is a third person who participated in the fraud and is in possession of the fruits thereof for the vendor.

8. In the circumstances last above stated, the only primary right for adjudication is the right of the plaintiff to payment of his claim out of the specific property. The other matters are incidental and germane to such primary right. They do not constitute another or other causes of action.

9. If a person, possessed of property as heir of another, sell the same with intent to prevent the creditors of the estate of his decedent from resorting thereto for the payment of his claim under sec. 3274, Stats. 1898, and the vendee participate in such purpose, the sale is not protected by sec. 3285, but is voidable under sec. 2320.

10. A foreign guardian has no greater authority over the estate of his ward in this state, after filing a certified copy of his appointment in the probate court, than a general guardian appointed by a court in this state. He cannot sell the real estate of his ward here situated under his general authority, but must obtain special authorization therefor as provided by law in case of other guardians, and a sale otherwise made will not affect the title attempted to be transferred.

11. If when a cause of action accrues in favor of a resident of this state against a nonresident thereof, the latter be out of the state, the statute of limitations upon the enforcement of such cause of action here will not run against the former while the latter remains so absent.

[Syllabus by MARSHALL, J.]

APPEALS from judgments of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Action to enforce the liability of heirs under sec. 3274, Stats. 1898. The action was commenced May 25, 1897, against *Dolly M., Martha M., William H.,* and *Myrtle Loucks,* minor heirs, and *Wallace E., Stephen P.,* and *Kate Rose Loucks,* adult heirs, of Phineas Loucks, deceased. The complaint set forth in substance the following facts: April 1, 1874, Phineas Loucks made a promissory note and delivered it to plaintiff, promising to pay plaintiff or bearer $338.71 one day after date with interest at the rate of ten per cent. per annum. April 4, 1876, he paid $63.33, May 22, 1877, $300, and October 28, 1890, $50. There is due the principal of the note and interest from its date at the rate mentioned therein, less the payments acknowledged. Phineas Loucks removed to California in 1877, and thereafter remained absent from this state till he died in 1891. He left no heirs except the defendants, his children, to whom his property in this state descended at his death. He then owned, in Outagamie county, this state, an undivided one-half interest or more in the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 18, town 32, range 18 E., worth about $600. He left no other property in this state. No administration has been granted in this state. There are no means by which plaintiff can collect his claim except by resorting to the land aforesaid and the statutory liability of the heirs under sec. 3274, Stats. 1898. Judgment was asked for, making plaintiff's claim a lien upon the land.

On an affidavit stating the same facts as those above set forth, and containing no allegation of indebtedness of the defendants to plaintiff, a writ of attachment was sued out, under which the interests of defendants in the land mentioned were seized. January 5, 1898, defendant answered, pleading the six-years statute of limitations, and putting in issue substantially all the allegations of the complaint except that in regard to Loucks's removal to California and his death in 1891, his leaving the land in Wisconsin, its de-

scent to defendants as his heirs, and that he left no other property in this state. The writ of attachment was set aside as unauthorized by law and unsupported by proper affidavit.

July 22, 1897, defendants were permitted to serve a supplemental answer to the effect that subsequent to the commencement of the action and before the filing of any notice thereof, they alienated the land mentioned for value and in good faith to *Louis Jacquot,* who was a *bona fide* purchaser thereof. Thereafter plaintiff was permitted to file a supplemental complaint and to bring in, as defendants, *Humphrey Pierce,* the guardian *ad litem* of the minor defendants and attorney for the defendants, *Louis Jacquot,* the alleged purchaser of the land, and *John Hurst.* The supplemental complaint charged, in effect, in addition to the allegations contained in the original complaint, that the heirs of Phineas Loucks in bad faith attempted to convey their interests in the land to *Jacquot* and that he conveyed the interest he thereby obtained to defendant *Hurst;* that the entire consideration for the land, which was to move to the heirs, had not been paid; that such part as had been paid was in the possession of defendant *Pierce;* that each and all of the parties had knowledge of and participated in the purpose of divesting said heirs of the title to the property, and that such purpose was to place the land and the proceeds thereof beyond the reach of plaintiff and prevent the collection of his claim. It was further charged that the validity of the title of *Hurst,* as to the interest in the land which he claimed to have obtained through *Jacquot,* was dependent upon whether a foreign guardian, without any authorization from a court of this state, can by his deed pass title to real estate of his ward there situated. The pleading set out in detail the history of the formation of the scheme of conveying the land to *Jacquot,* and his conveying the same to *Hurst,* and alleged with particularity that the purpose thereof was to defraud plaintiff, and that such purpose was participated in by each and all of the added defendants.

Defendant *Pierce* interposed a general demurrer to the complaint, and also demurred upon the ground that several causes of action were improperly united. Defendants *Hurst* and *Jacquot* joined in a like demurrer. The demurrers were sustained. A judgment was rendered dismissing the complaint as to *Pierce*, with costs in his favor, and a like judgment was rendered in favor of defendants *Hurst* and *Jacquot*.

The allegations of the complaint, aside from the new matter brought in in relation to the alienation of the property to *Jacquot*, were established by the evidence. Plaintiff objected to evidence offered by defendants as to the *bona fides* of the alienation of the property to *Jacquot* because the action had been dismissed as to him, leaving no issue as to the good faith of the alienation that could be effectually tried. The objection was overruled. Evidence was given that a fair consideration for the land was paid by *Jacquot*. Plaintiff did not offer any evidence on the issues presented by the supplemental complaint.

The findings were as follows:

The allegations of the complaint, independent of the new matter brought in by supplemental complaint, are true.

January 24, 1898, the adult heirs, in good faith and for value, alienated their interest in the real estate sought to be charged, to *Louis Jacquot*.

W. H. Hurst was appointed general guardian of the minor defendants by a court of competent jurisdiction in California, and was authorized by such court to sell the interest of such minors in the land in question. He made a sale thereof to *Jacquot* pursuant to such authority and conveyed the property accordingly, the same being made in good faith and for a fair consideration.

This action was commenced more than six years after the cause of action accrued.

Notice of the pendency of the action was duly filed April 26, 1898.

Upon such findings the court decided that plaintiff was guilty of laches to the prejudice of defendants, and that they were entitled to judgment dismissing the complaint with costs.

Separate appeals were taken by plaintiff from the judgments.

*John Bottensek*, for the appellant.

For the respondents there was a brief signed *Humphrey Pierse*, attorney for defendants *Loucks*, and *Henry D. Ryan*, attorney for defendants *Hurst, Jacquot*, and *Pierce*, and oral argument by *Mr. Pierce*.

MARSHALL, J.   The attachment was properly discharged. The provisional remedy for the seizure of the defendant's property prior to a judgment against him is confined to cases where the cause of action sought to be enforced is for a debt due from the defendant on contract.   The cause of action here is for the recovery of a debt due from the deceased, Phineas Loucks, primarily out of property which his heirs inherited.   They are not liable in excess of such property, or liable at all upon contract.   Moreover, this is an equitable action requiring an accounting, and an attachment is not allowable in such an action.   Further, an order granting or refusing a provisional remedy must be reviewed, if at all, on direct appeal from the order.   It does not affect the merits of the action, nor the judgment, so as to render it reviewable under sec. 3070, Stats. 1898.   While an attachment must have an action pending to support it, the two are distinct remedies, and if the former be vacated or otherwise disposed of before being involved in the final relief granted, the review on appeal must be confined to the special right of appeal given by subd. 3, sec. 3069, Stats. 1898. Any other right of appeal in such circumstances is obviously valueless.   If a writ of attachment is set aside, the attachment plaintiff, if he deem himself aggrieved, should proceed

promptly to appeal under sec. 3069, Stats. 1898, and take the proper proceedings to continue the attachment in the meantime.   Drake, Attachment, § 428a.

The judgment in favor of respondent *Pierce* and that in favor of respondents *Hurst* and *Jacquot* are irregular and wholly unauthorized.   Defendants in an action can have but one final judgment, though that may award them several relief against the plaintiff, or between themselves, with this exception: in an action incidentally involving an accounting or some particular issue of fact or condition requisite to a full determination of the rights of the parties, where there is a finding which, notwithstanding such circumstance, substantially disposes of the controversy between the parties, an interlocutory judgment may be rendered.   Sec. 2883, Stat. 1898.   The rendition of a judgment in advance of the final disposition of the case, as was done here, has been many times condemned.   *Sellers v. Union L. Co.* 36 Wis. 398; *Scott v. Reese,* 38 Wis. 636; *Gage v. Allen,* 84 Wis. 323, 330.   The Code only authorizes a judgment, finally disposing of the rights of all the parties, with the exception heretofore referred to.   An action may properly be dismissed as to a defendant, but whatever relief he obtains in the nature of a final judgment must be embodied in the judgment rendered, which finally closes up the entire controversy presented to the court for adjudication by the pleadings.   By reference to the cases cited, it will be seen that the law has been settled so long, as indicated, that there is little need for any one to go astray.

The judgment in favor of *Pierce* and that in favor of *Hurst* and *Jacquot* being out of the way, we reach the question of whether the demurrers were properly sustained.   We are not definitely informed by anything in the record, or the briefs of counsel, or by anything said on the oral argument, what the grounds of the court's decision were or the extent of it, whether it was grounded on the theory that

several causes of action are improperly united in the complaint or the theory that the complaint does not state a cause of action against either of the demurring defendants, or whether it was grounded on both theories.

There is certainly but one cause of action stated in the complaint. The sole primary right presented for enforcement was that of the plaintiff, under sec. 3274, Stats. 1898, and subsequent sections, to the value of the real estate which came to the heirs of Phineas Loucks by inheritance, so far as necessary to satisfy his debt. The infallible test, by which to determine whether a complaint states more than one cause of action, is, Does it present more than one subject of action or primary right for adjudication? *Gager v. Marsden,* 101 Wis. 598. If it stand that test, no matter how many incidental matters may be connected with the primary right, rendering other parties than the main defendant proper or necessary to the litigation for a complete settlement of the controversy as to plaintiff, or for the due protection of their rights as against him or between themselves, there is yet but one cause of action, and a demurrer upon the ground of the improper joinder of causes of action will not lie.

The sole subject of the action stated in the complaint being to recover plaintiff's claim out of the land that descended to the Loucks heirs, the setting aside of fraudulent conveyances from such heirs or their grantees to others, which interfere with the accomplishment of that end, is germane to that subject, and, necessarily, the claimants of the property under such conveyances are proper if not necessary parties to the litigation. Without their presence before the court the final judgment would be valueless.

Again, since it is the value of land that the action seeks to reach, if *Pierce, Hurst,* and *Jacquot* conspired together with the Loucks heirs to prevent that being accomplished, and either is in possession of any of the fruits of the fraud, he is as much a trustee thereof for the plaintiff as the holder of

the legal title to the land who participated in the fraud. So if the land cannot be reached because it has passed into the hands of a *bona fide* holder, but the proceeds of the sale of the property are in the hands of a guilty participant in the fraud, a trust is impressed thereon for the benefit of plaintiff, and the enforcement thereof is germane to the primary purpose of the action. It follows that each of the defendants *Pierce*, *Hurst*, and *Jacquot* was properly brought into the case, and that the relief sought is germane to the main purpose of the litigation.

It will be readily seen, not only that there is but one cause of action stated in the complaint, but that it reaches each of the demurring defendants. The Loucks heirs had no absolute right to sell their interest in the real estate as against plaintiff. They were privileged to free the property from plaintiff's right to a specific lien thereon, by the alienation thereof in good faith prior to the filing in the proper office of the notice of the pendency of the action, and not otherwise. That is governed by sec. 3285, Stats. 1898, which reads as follows: "No real estate descended to any heir or devised to any devisee, which shall have been alienated in good faith and for value by him before a notice of the pendency of the action was filed or, if no such notice be filed, before the final judgment is docketed in the county, shall be liable to execution on any such judgment or any way affected thereby." That is, prior to the filing of a notice of *lis pendens*, as indicated in the section, the Loucks heirs had the same right to part with their title to the real estate as their ancestor would have had if living. If they parted with such title under such circumstances as to taint the transaction with fraud and render it voidable on that account under sec. 2320, Stats. 1898, then their conveyance or conveyances were void at the election of plaintiff. But, necessarily, such election could not be made effectual to avoid the transfers

without the fraudulent vendee or vendees being brought into the litigation. So the complaint is not only free from the infirmity charged, of improperly uniting two causes of action, but the general demurrer thereto was not well taken.

We now come to this question: "Did the effort of the Loucks heirs to divest themselves of title to the property accomplish their purpose? As to the adult heirs the answer must be in the affirmative. The title passed to the grantee. Whether a voidable title passed or not depends upon whether the allegations in the supplemental complaint, to the effect that the transfer was not made in good faith, are true. The mere fact that this action was pending when the transfers were made is not sufficient to impeach the transaction for fraud. To accomplish that, it must be shown that there was an intent on the part of the vendors of the property, participated in by the vendees, to hinder, delay, or defraud the plaintiff. If the purpose was to turn the property into money and remove it from the state, and thereby create such a condition as to prevent plaintiff from collecting his claim, then the transaction is evidently tainted with bad faith within the meaning of the statute.

. , As to the minor heirs, the question of whether their interest in the property passed to *Jacquot* by their guardian's deed, depends upon whether a foreign guardian can pass the title to lands of his ward situated in this state without first obtaining authority so to do from the courts here. That must be answered in the negative. It seems that the learned circuit court decided to the contrary on the authority of the note to § 804 of Gary's Probate Law (2d ed.). The text is as follows: "A domiciliary foreign guardian of a nonresident ward who has no guardian appointed in Wisconsin, upon filing his original appointment or a duly authenticated copy in any county court of Wisconsin, is invested with all the powers and rights in relation to the ward's property in

Wisconsin of a guardian duly appointed in the state," citing sec. 4281, Stats. 1898. Such text states the power conferred by the section with substantial accuracy. The language is somewhat inaccurate in confining the section to "*domiciliary foreign guardians.*" No such idea is found in the section. It refers to foreign guardians generally, regardless of where domiciled. The note referred to is as follows: "This extraordinary statute gives the absolute control of a nonresident's property in the state, without the supervisory control of any court of the state, to the guardian." If that means that the section vests in the foreign guardian the right to sell his ward's real estate without permission of or supervision by the state court, or otherwise dispose of the proceeds of a sale of such property, nothing could be further from the truth. The text writer, in preparing his note, may not have intended that such an interpretation should be put upon it as the one adopted by the circuit judge in this case, though it would easily bear such interpretation. Perhaps it should be stated stronger, like this,— that the language will hardly bear any other interpretation. It is unfortunate that such an erroneous view of the statute (we cannot call it construction, because the statute is too plain to admit of interpretation or construction) should have found a place in a text-book so frequently resorted to as Gary's Probate Law, especially by young practitioners. Sec. 4281 gives to foreign guardians, under the conditions stated therein, the same power to sell the real property of their wards situated in this state as guardians appointed by the state court possess. The latter, merely under their general powers, cannot sell or convey their ward's real estate. They can only do so by procuring special authority for that purpose from the court, as provided in ch. 151, Stats. 1898. No such authority was obtained by the guardian of the minor defendants, hence his attempt to dispose of their property did not affect the title

thereto. It remained in such minors after such attempt the same as before.

The court decided as a matter of law that appellant's claim was barred by laches. We cannot discover any finding of fact to support that view. There is no finding of fact touching the subject of laches. There is a finding that plaintiff's cause of action was more than six years old before this action was commenced, but that was made, obviously, because of the plea of the statute of limitations. It does not touch the subject of limitation by mere laches in the absence of a finding, and evidence to support it, that the appellant had knowledge of his rights, or reasonable means of knowing thereof, and that in such situation he unnecessarily delayed the enforcement of his claim against the property of the Loucks heirs, to their prejudice. There is no reason for saying that he was barred by laches. The evidence shows that up to the time this action was commenced, it was not known, except by circumstances, that Phineas Loucks was dead. He disappeared in 1891, since which time no one had seen or heard from him. Appellant resided at a great distance from where Phineas Loucks resided and where he disappeared. He commenced this action very soon after the death of Loucks could be established by the legal presumption arising from the circumstance of his disappearance and that no one had seen or heard from him. Before such an important conclusion of law should have been made as that the plaintiff was barred by laches from the prosecution of his claim, some finding of fact should have been made to base it on. It seems that the conclusion is clearly erroneous.

The plea of the statute of limitations upon the enforcement by action of a liability created by law, cannot avail the defendants, because the heirs were out of the state when the plaintiff's cause of action arose, and so continued. That

prevented the limitation statute from running in their favor. Sec. 4231, Stats. 1898.

*By the Court.*— The judgments are reversed, and the cause remanded for a new trial.

CASSODAY, C. J., took no part.

As to participation by purchaser in fraud of vendor which will invalidate transfer for good consideration as against vendor's creditors, see note to *Kansas M. P. Co. v. Sherman* (3 Okla. 204), in 32 L. R. A. 33.— REP.

