McArthur, Respondent, vs. Moffet and others, Appellants.

*October 4—November 15, 1910.*

*Pleading: Joinder of causes of action: Statute construed: "Cause of action:" "Transaction:" "Subject of action."*

1. The dominant idea in subd. 1, sec. 2647, Stats. (1898), is to permit joinder of causes of action legal or equitable if there is some substantial point of unity between them.
2. As used in said subdivision the terms "cause of action," "transaction," and "subject of action" mean different things.
3. The term "cause of action" as there used includes the facts showing plaintiff's right and its violation by the defendant.
4. The term "transaction" means whatever may be done by one person which affects another's rights and out of which a cause of action may arise.
5. Cases in this court as to what constitutes "subject of action" cannot be harmonized, and the court does not now attempt to lay down any hard-and-fast definition which shall be applicable to all cases which may arise.
6. The definition given in *Telulah P. Co. v. Patten P. Co.* 132 Wis. 425, 430, and approved in *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 679, of the term "subject of the action" in sec. 2656, Stats. (1898), as being composed of the plaintiff's right and the defendant's invasion thereof, is withdrawn.
7. The term "subject of action" must be deemed to mean the same thing wherever it is used in the Code.
8. The clause in subd. 1, sec. 2647, Stats. (1898), in which the term "subject of action" is used will find its most frequent application in equitable actions, but is not to be limited to them.
9. In possessory or proprietary actions, whether involving real or personal property, the "subject of action" is composed of the plaintiff's primary right together with the specific property itself. A statutory cause of action to quiet title to land and a cause of action for trespass on the same land arise, therefore, out of "transactions connected with the same subject of action," and may be joined.
10. *It seems* that in all other actions the plaintiff's right which is alleged to have been invaded must be held to be an essential part, and perhaps in many cases the whole, of the "subject of the action," as those words are used in the Code.

APPEAL from an order of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

The cause was submitted for the appellants on the brief of *C. R. Fridley,* and for the respondent on that of *Grace & Hudnall.*

WINSLOW, C. J. The complaint contains two counts. The first states a statutory cause of action under sec. 3186, Stats. (1898), to quiet plaintiff's title to a number of tracts of unoccupied land to which the defendants "make some claim." The second states a cause of action at law to recover damages for trespass and the cutting of timber on said lands prior to the commencement of the action. A demurrer to this complaint for improper joinder of causes of action was overruled, and the defendants appeal.

The exact question presented is whether a statutory cause of action to quiet title to land and a cause of action for trespass on the same land "arise out of the same transaction or transactions connected with the same subject of action," within the meaning of subd. 1, sec. 2647, Stats. (1898). These words are found in the first subdivision of that section of our Code which authorizes the joinder of different causes of action in the same complaint. They were first introduced into the New York Code by amendment in 1852. They were incorporated into our original Code in 1856, and have remained there unchanged since that date. They are also to be found substantially unchanged in the Codes of nearly if not quite all of the Code states. It would seem that at this late date there ought to be little doubt as to their true scope and meaning. Courts and text-writers have been busy for more than half a century drafting and redrafting definitions of the words "transaction" and "subject of action" as new cases have presented themselves, but on the whole it may well be doubted whether the discussions have resulted in clarity of

thought. The words are general to the last degree. Indeed
they must be so, for they are intended to provide for and ap-
ply to the myriad difficulties that may arise between man and
man in all kinds of situations, and no words of limited or
narrow meaning could be used. The difficulty lies not merely
in the unfortunate paucity and poverty of human language,
but in the equally unfortunate incapacity of the human mind
to appreciate in advance and provide for future difficulties
arising out of new situations and complications.

In view of what has been said, it may seem somewhat pre-
sumptuous for us to enter upon a new discussion of the sub-
ject or to attempt to make new definitions and thus perhaps
only make confusion worse confounded. We would never
willingly "darken counsel by words without knowledge," and
we hope not to do so now; but we feel that the case demands
a careful re-examination of the meaning of the words in ques-
tion in the light of all that the various courts and text-writ-
ers have said about them. It may be that we shall add noth-
ing useful to the discussion, yet it seems as though every
treatment of the subject by an intelligent mind, viewing it
from a new standpoint and as applied to new circumstances
and aided by the experience and suggestions of previous in-
vestigators, should be helpful.

Sec. 143 of the original New York Code of 1848 (ch. 379,
Laws of N. Y. 1848) provided for the joinder of several
causes of action in the same complaint, but it contained no
provision of this kind. It simply provided that "the plaint-
iff may unite several causes of action in the same complaint,
where they all arise out of "(1) Contract, express or implied,"
and then followed six subdivisions or classes of actions, the
section closing with this provision: "But the causes of action,
so united, must all belong to one only of these classes, and
must equally affect all the parties to the action, and not re-
quire different places of trial." It will be noticed that the

section contains no provision expressly allowing the joinder of legal and equitable causes of action, nor does it contain the provision now under consideration, namely, the provision allowing joinder where the different causes "arise out of the same transaction or transactions connected with the same subject of action."

The cold, not to say inhuman, treatment which the infant Code received from the New York judges is matter of history. They had been bred under the common-law rules of pleading and taught to regard that system as the perfection of logic, and they viewed with suspicion a system which was heralded as so simple that every man would be able to draw his own pleadings. They proceeded by construction to import into the Code rules and distinctions from the common-law system to such an extent that in a few years they had practically so changed it that it could hardly be recognized by its creators.

Although the Code by its terms abolished all existing forms of pleading and prescribed one general form of pleading which should be used in all actions, the courts early decided that the distinctive features of pleadings at law and in equity still remained, and so they easily held that what was formerly called a cause of action at law could not be joined with what was formerly called a cause of action in equity.

To meet and counteract this narrow and illiberal construction of the law the amendments of 1852 were adopted, providing expressly that legal and equitable causes of action might be joined, provided they both belonged to one of the seven classes, and further creating a new class of joinable actions, to wit, those which arise out of the "same transaction or transactions connected with the same subject of action." It is very clear that the legislative intent in making these amendments was to permit and encourage the joinder of causes of action which could reasonably be said to involve kindred rights and wrongs, and thus settle such kindred rights

and wrongs in one proceeding, rather than to require them to be settled by piecemeal in different actions with much greater expenditure of time and money.

Some other conclusions seem equally clear concerning these amendments. They were all intended to accomplish some definite purpose, some change in the existing condition of things. They were not inserted to fill up space or for rhetorical effect. The word "transaction" was intended to define one thing and the words "same subject of action" another and different thing, and both were intended to define a different thing from the words "cause of action." To hold that any two of these three terms mean the same thing is to make nonsense of the whole phrase.

Again, it is very apparent that the dominant idea was to permit joinder of causes of action legal or equitable in case there was some substantial point of unity between them. It was contemplated evidently that this point of unity might be very near to the causes of action, i. e. that both causes of action might arise directly out of the same event or affair (called a "transaction" in the statute), in which case they were joinable; and it was also contemplated that the point of unity might be further off in the chain of events, i. e. that while the two causes of action had their immediate inception in different "transactions," still, if these different transactions were both connected with one fundamental matter or thing or combination of matters or things called the "subject of action," there was still a sufficient element of unity to justify their being joined in one action. Now it is manifest that the principal difficulty here consists in the meaning of the term "subject of action." The words "cause of action" and "transaction" present no very serious difficulties, but "subject of action," as before said, is a very general and comprehensive term which must be applied to very many and very diverse situations. It is relatively easy to give it a definition in terms equally general. For instance, one can say that it is

some fundamental matter or thing common in greater or less degree to each cause of action and without the prior existence of which the cause of action itself could have no existence; but this definition affords little help in applying the words to a concrete case. The definition is as general and vague as the words which it is supposed to define.

The difficulties surrounding the accurate definition of these words were at once appreciated by the courts of New York. Judge COMSTOCK, in 1858, said of the amendment of 1852:

"Its language is, I think, well chosen for the purpose intended, because it is so obscure and so general as to justify the interpretations which shall be found most convenient and best calculated to promote the ends of justice. It is certainly impossible to extract from a provision so loose and yet so comprehensive any rules less liberal than those which have long prevailed in courts of equity." *N. Y. & N. H. R. Co. v. Schuyler,* 17 N. Y. 592.

In 1876 Chief Justice CHURCH said:

"This language is very general and very indefinite. I have examined the various authorities upon this clause, and I am satisfied that it is impracticable to lay down a general rule which will serve as an accurate guide for future cases. It is safer for courts to pass upon the question as each case is presented. To invent a rule for determining what the 'same transaction' means, and when a cause of action shall be deemed to 'arise out' of it, and what the 'same subject of action' means, and when transactions are to be deemed connected with it, has taxed the ingenuity of many learned judges, and I do not deem it necessary to make the effort to find a solution to these questions." *Wiles v. Suydam,* 64 N. Y. 173.

The well known allusion to that unfortunate class of people who rush in where "angels fear to tread" may occur to the irreverent mind at this point, but we feel compelled to proceed with our investigations nevertheless.

As before indicated, it is entirely certain that the three expressions, "cause of action," "transaction," and "subject of

action," mean different things as used in this statute.   To say
that "subject of action" means the same thing as "transac-
tion" is to say that the legislature chose to be wilfully obscure
and misleading at a time and place where clarity was above
all things necessary.   To say that it means the same thing as
"cause of action" would make the clause proclaim that causes
of action may be joined if the same cause of action is common
to both of them—a construction which involves a manifest
absurdity.   Our main concern here is with the meaning of
the words "subject of action," because, if the two causes of
action are joinable at all, it is because they arise out of trans-
actions connected with the same subject of action, rather than
because they arise out of the same transaction.

The intimate relationship between the three terms, "cause
of action," "transaction," and "subject of action," in the sen-
tence, however, and the evident necessity of the drawing of
some fairly accurate distinction between them in order that
the true significance of the latter term may be arrived at,
renders it proper, if not absolutely necessary, to consider
them all.   As the meaning of the first two terms seems to be
quite well settled, both in this state and in the Code states
generally, it seems wise to take them up first in the discussion.

1. The term "cause of action" occurs several times in the
original Wisconsin Code.   Perhaps its appearance is most
significant in subd. 2 of sec. 47 of that Code (ch. 120, Laws
of 1856), now subd. 2 of sec. 2646, Stats. (1898), which pro-
vides that the complaint shall contain "a plain and concise
statement of the facts constituting each cause of action, with-
out unnecessary repetition."   This makes it very clear that in
the minds of the makers of the Code the "cause of action" is
made up of the facts necessary to be pleaded and proved in
order to establish the defendant's liability to the plaintiff.
These must be of two classes: (1) the facts which show the
plaintiff's right; and (2) the facts which show the defend-
ant's violation of that right.

Pomeroy says (Code Remedies, 4th ed. § 347):

"The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong."

Substantially this definition is supported by the authorities generally. It is supported in this state in *Bruil v. Northwestern Mut. R. Asso.* 72 Wis. 430, 39 N. W. 29. Rapalje's definition is there quoted: "The fact, or combination of facts, which give rise to a right of action," and it is said: "A cause of action does not arise until the facts exist which constitute the cause of action, and not merely the one fact which may be the breach of duty." In *South Bend C. P. Co. v. George C. Cribb Co.* 105 Wis. 443, 81 N. W. 675, it is said: "In every cause of action there must exist a primary right, a corresponding primary duty, and a failure to perform that duty." In *Emerson v. Nash,* 124 Wis. 369 (102 N. W. 329), at page 387 it is said: "A cause of action consists of those facts as to two or more persons entitling at least some one of them to a judicial remedy of some sort against the other, or others, for the redress or prevention of a wrong. . . . There should be a right to be violated and a violation thereof."

There seems no logical escape from the conclusion that the term "cause of action" must include the facts showing (1) the plaintiff's right; (2) the defendant's corresponding duty; and (3) the defendant's breach of that duty, or, to put it more tersely, the plaintiff's right and its violation by the defendant.

2. The word "transaction" is defined in Pomeroy's Code Remedies (4th ed. § 367) as follows: "A negotiation, or a proceeding, or a conduct of business, between the parties, of such a nature that it produces, as necessary results, two or more different primary rights in favor of the plaintiff, and wrongs done by the defendant which are violations of such rights."

In *Crafl R. M. Co. v. Quinnipiac B. Co.* 63 Conn. 551, 29 Atl. 76, it is defined as "something which has taken place whereby a cause of action has arisen. It must . . . consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered."

This court defines it in the *Emerson Case,* 124 Wis. 369 (102 N. W. 329), at page 389, as follows: "Any event in which two or more persons are actors, involving a right which may presently or by what may proximately occur in respect thereto be violated, creating a redressible wrong, is a transaction within the meaning of the statute." This seems practically to be the same as Pomeroy's definition.

In *Scarborough v. Smith,* 18 Kan. 399 (a very interesting and instructive case), it is defined thus: A transaction is "whatever may be done by one person which affects another's rights, and out of which a cause of action may arise."

At first glance both Pomeroy's definition and the definition given in the *Emerson Case* might seem to imply that both parties to the action must be active participants in the event or affair in order that it constitute a "transaction." If this were so, neither a trespass on land in the absence of the owner, nor an unfounded claim of title to land in like absence, would amount to a transaction, and it would necessarily follow that neither cause of action here stated arises out of a "transaction" within the meaning of the statute, and hence there could be no connection between either cause of action and the subject of the action.

The definitions referred to, however, do not, when properly understood, mean that both parties must actually be present in order that an event or affair may rise to the dignity of a transaction. If the act of one person wrongfully invades or infringes upon the right of another there is undoubtedly a "transaction," though the injured party be not

physically present.    He may, in such case, truly be called a participant in the act, because he is represented by his right which is invaded or violated by his adversary's act.    The definition in the Kansas case cited exactly fits this view. With this understanding of its meaning there seems no reason to doubt that the definition given by this court in the *Emerson Case* is substantially correct.

3. We pass now to the consideration of the phrase "subject of action," which presents much greater difficulty as well as greater confusion in the authorities.    We start with a proposition which seems to us incontrovertible, namely, that the makers of the Code not only had some definite and certain idea in mind when they used these words, but that such idea was a different idea from the ideas embodied in the words "cause of action" or "transaction."

It is entirely true that in literature, logic, and grammar the word "subject" means that which is treated of, the theme of discourse, or that of which something is affirmed or predicated.    Hence it could logically be said, if there were no other considerations to be kept in view, that the subject of an action is the defendant's invasion of the plaintiff's right, because this is the matter which is the paramount theme treated of.    It by no means follows, however, that this definition can or ought to be applied here.    The question is not necessarily, What do literary purists or lexicographers mean by the word? although this is helpful and should be considered, but, What did the legislature mean by it?    It is not a word like "horse" or "cow," which can mean but one thing in whatever position it be placed, but it may be applied, and probably rightly applied, by different minds to different things, tangible or intangible, under the same circumstances.    For example, in an action of ejectment one mind might arrive at the conclusion that the land alone was the subject of the action, another that its title was the subject, another that the defendant's wrongful possession was the subject, and still another that all these

things together constitute the subject. All of them are treated of in the action. Which or how many of them did the legislature intend to refer to when it spoke of the "subject of action?" This is the problem which it is necessary to solve in order to decide the present case.

In considering this question it is important, in the first place, to note that the term is used several times in the original as well as in the present Code in entirely different connections. Of course it must be assumed that wherever it is used in the same act it means the same thing, and it ought to be helpful to ascertain the meaning which seems ascribed to the term in its other connections, if any particular meaning be apparent.

In the original Wisconsin Code the term was used at least seven times, including the instance under discussion. The first instance seems to be in sec. 21 (ch. 120, Laws of 1856), now sec. 2602, Stats. (1898), which provides that "all persons having an interest in the *subject of the action* and in obtaining the relief demanded may be joined as plaintiffs." The inference here would seem to be that tangible property might, in some cases at least, be considered the subject of the action; but perhaps the inference is not very persuasive, and we pass to the next instance of the use of the term, which occurs in sec. 27 of the original Code, now appearing in slightly altered form as sec. 2619, Stats. (1898). This section provides that four classes of actions must (subject to the power of the court to change the venue) be tried in the county in which the *subject of the action* or some part thereof is situated. These classes of actions are (1) actions for the recovery of real property, or of any estate or interest therein, or for the determination in any form of such right or interest, or for injuries to real property; (2) actions for the partition of real property; (3) actions for the foreclosure of a mortgage of real property; and (4) actions for the recovery of personal property distrained for any cause. It will be noticed that these are all actions involv-

ing either the title or some interest in or lien upon specific real or personal property. Now, can there be any doubt from the language of the section and the careful grouping of these actions, which all involve specific tangible property, that the legislature meant to refer to that specific tangible property as the subject of the action and to require that the action be tried in the county where it is situated? Again, is there any doubt that the profession and the courts have so construed the section without question from 1856 up to the present time? We believe no case will be found in this state where it has been even suggested by court or counsel that this section means anything but that the actions named are local actions whose locality (subject to change of venue for sufficient cause) is fixed by the locality of the real or personal property involved, which real or personal property is called by the legislature the "subject of the action." *Young v. Lego,* 38 Wis. 206; *West v. Walker,* 77 Wis. 557, 46 N. W. 819.

But any lingering doubt as to the meaning of the term here must surely be removed when we consider subd. 3 and 4 of sec. 40 of the original Code, now found in expanded form in subd. 1, 3, and 7 of sec. 2639, Stats. (1898). This section provides for service of the summons by publication where personal service cannot be made. Such substituted service may be made under these subdivisions (1) where the defendant is a nonresident, but has property within the state, and the action is on contract, "and the court has jurisdiction of the *subject of the action,*" and (2) where "the *subject of the action* is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein." Here it is definitely stated that there are actions in which the subject of action is real or personal property. Here also, we think, there has been an universal consensus of opinion among lawyers and courts that the last mentioned clause was in-

tended to and did apply to all controversies involving the title of specific real or personal property situated within the state, and that in such cases there could be service by publication, because of the fact that such property was the subject of the action and was within the state.

In sec. 49 of the original Code, now sec. 2649, Stats. (1898), it is provided that the defendant may demur to the complaint when it appears upon the face thereof that the court has "no jurisdiction of . . . the subject of the action," and in sec. 55, Id., now sec. 2656, Stats. (1898), it is provided that the defendant may interpose by way of counterclaim "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the *subject of the action;*" and, lastly, in sec. 73, Id., now sec. 2647, Stats. (1898), we find the provision for joinder of causes of action legal or equitable "where they arise out of the same transaction or transactions connected with the *same subject of action.*"

Some time and space has been spent in collating and considering these various instances of the use of the term "subject of action" in the original Code, not only to show that it must have been used by the Code makers deliberately and advisedly, but also because it seems that in many of the discussions of its meaning as used in the joinder and counterclaim sections there has been little or no attention paid to the help which might be derived from considering the obvious meaning attached to it when used in the other sections above referred to.   Possibly some of the confusion in the authorities might have been avoided had all the provisions of the act in which the term is used been viewed together.   That there is much confusion upon the subject, both in the decisions and in the text-books, cannot be denied, and there seems to be as much in Wisconsin as elsewhere.   In *Scheunert v. Kaehler,* 23 Wis. 523, it was said, considering the counterclaim statute, that the subject of an action for conversion of money was the "tort or

wrong committed;" and in *Stolze v. Torrison,* 118 Wis. 315, 95 N. W. 114, it was said of an action of trespass upon real estate, that the subject of the action is not the land nor the title to the land, but the torts alleged. These two cases seem to indicate that, in actions for torts committed upon property, the tort and not the property is the subject of the action.

On the other hand, it is said in *Cornelius v. Kessel,* 58 Wis. 237, 16 N. W. 550 (still considering the counterclaim statute), that in ejectment "the subject of the action is the land in controversy;" and in *Kruczinski v. Neuendorf,* 99 Wis. 264, 74 N. W. 974, it is said that an equitable cause of action to remove a cloud fraudulently placed on the title of land and a legal cause of action to recover possession of the land, with rents and profits for its use, may be joined under the statute because "the subject of the action is the land." In *Leinen-kugel v. Kehl,* 73 Wis. 238, 40 N. W. 683, which was an action to quiet title to land, the conclusion seems to be based upon the idea that the land is the subject of the action, although the proposition is not definitely stated in the opinion. In *Grignon v. Black,* 76 Wis. 674, 45 N. W. 122, 938, which was an action to quiet title, it was said, considering the counterclaim statute, that the subject of the plaintiffs' action was "their title and right of possession to the land in question."

The radical inconsistency in these holdings is very apparent. In a trespass action, which is brought to redress a wrongful entry on land, the subject is the tort and not the land; in an ejectment action, which is brought to redress a wrongful holding of land, the subject is the land and not the tort; while in *quia timet* the subject is said in one case to be the land itself, and in another to be the plaintiff's title and right of possession of the land.

But this is not all. As we have seen, it was held in the *Scheunert Case* in the 23d Wisconsin that in an action for conversion the subject was the tort or wrong committed; but in the later case of *Mulberger v. Koenig,* 62 Wis. 558, 22 N.

W. 745, which was an action in equity to prevent the wrongful obstruction of a mill-race, it was said that the subject of the action "is nothing more or less than the facts constituting the plaintiff's cause of action." This latter case was followed in *Telulah P. Co. v. Patten P. Co.* 132 Wis. 425, 112 N. W. 522 (another water-power case), where it was said that the subject of the plaintiff's action is "his right and the invasion of that right" by the defendant; and this definition was approved and applied in *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 679, 112 N. W. 297.

Now can it be possible that it is true that the subject of the action, as the term is used in the Code, means the plaintiff's right and the defendant's invasion of that right? If so, then it is synonymous with cause of action, and we should be able to substitute the words "subject of the action" for "cause of action" wherever they occur in the Code, and *vice versa*. It is very certain that we cannot do this without making nonsense of the Code and convicting its authors of the reckless use of misleading language in the crucial paragraphs of a law which was intended to completely revolutionize all legal procedure.

There is another class of cases in this court in which the subject has received passing consideration, viz.: the cases involving the winding up of the affairs of insolvent corporations and the enforcement of the liabilities of corporate officers and stockholders. In these cases the settlement of the corporate affairs, the enforcement of the various liabilities, and the administration of the trust fund have been said to constitute the "subject" or "subject matter" of the action (not, however, in direct reference to the joinder section of the statute) ; and it has also been said in these cases that the various liabilities sought to be enforced in such actions are not separate causes of action, but mere incidents of one cause of action, *i. e.* the "settlement of the corporate affairs." In the first of the cases cited below, "subject matter" and "cause of action" seem to be considered practically the same. *Gager v. Mars-*

*den,* 101 Wis. 598 (see p. 604), 77 N. W. 922; *Harrigan v. Gilchrist,* 121 Wis. 127 (see p. 296 *et seq.*), 99 N. W. 909; *Foster v. Posson,* 105 Wis. 99, 81 N. W. 123.

Again, there are several cases, which can hardly be classified under any given head, in which the question was whether one or several causes of action are stated in the complaint, and in the treatment of that question the term *subject of action* or *subject of litigation* has been used and given a meaning, not, however, with direct reference to the joinder statute. Thus, in *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229, which was an action by a corporation against alleged conspirators to recover back corporate assets and set aside a fraudulent judgment, it was said, in answer to the objection that two causes of action were improperly joined, that "there is but one subject of action, the conspiracy to defraud and its consummation to the damage of the plaintiff."

In *Jordan v. Estate of Warner,* 107 Wis. 539, 83 N. W. 946, which was a claim against an estate for the proceeds of lands alleged to belong to the plaintiff, but sold by the deceased as plaintiff's agent, involving also a claim that a deed of the lands made to the deceased was in fact a mortgage, it was said: "The sole primary subject of the litigation was the alleged indebtedness of the estate to plaintiffs."

In *Adkins v. Loucks,* 107 Wis. 587, 83 N. W. 934, which was an action by the creditor of a deceased person to enforce the liability of heirs under sec. 3274, Stats. (1898), who had received the real estate of deceased, other parties being joined to whom part of the land had been fraudulently conveyed, it was said:

"The infallible test by which to determine whether a complaint states more than one cause of action is, Does it present more than one subject of action or *primary right* for adjudication?" And again: "The sole subject of action stated in the complaint being to recover plaintiff's claim out of the land that descended to the Loucks heirs," the setting aside of the fraudulent deeds is germane to that subject.

Other Wisconsin cases in which casual attention has been given to the subject are *Alliance E. Co. v. Wells,* 93 Wis. 5, 66 N. W. 796; *Endress v. Shove,* 110 Wis. 133, 85 N. W. 651; *Aultman Co. v. McDonough,* 110 Wis. 263, 85 N. W. 980; *Koepke v. Winterfield,* 116 Wis. 44, 92 N. W. 437; *Krakow v. Wille,* 125 Wis. 284, 103 N. W. 1121; *Tallman v. Barnes,* 54 Wis. 181, 11 N. W. 478, and *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 91 N. W. 994; but in none of them do we find any helpful discussion of the question.

It seems very evident to us that the cases in this court cannot be harmonized and we shall not undertake the task: the confusion is hopeless. Looking to the decisions in New York and other Code states, as well as to the attempts of text-writers to solve the difficulty, we find the same confused condition. To attempt to analyze the decisions would be impossible within any permissible limits, but the conclusions of the leading text-writers may profitably be considered.

Mr. Pomeroy, in his valuable work on Code Remedies, has made three attempts to define the term *subject of action.* At sec. 369 (4th ed.) he says:

"The term 'subject of action,' found in the Code in this and one or two other sections, was doubtless employed by its authors and the legislature as synonymous with, or rather in place of, 'subject matter of the action.' I can conceive of no other interpretation which will apply to the phrase and meet all the requirements of the context. 'Subject matter of the action' is not the 'cause of action,' nor the 'object of the action.' It rather describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted. It is possible, therefore, that several different 'transactions' should have a connection with this 'subject matter,' or, what seems to me to be the same thing, with this 'subject of action.'"

This seems a fairly definite and workable definition as applied to actions relating to specific real or personal property, but in sec. 384 of the same work, after discussing and criti-

cising the definition given by Mr. Calvert in his work on Parties, he says:

"In equitable actions there is generally, if not quite always, a fund, or estate, or property, which is the subject of the suit, as well as questions concerning the same to which the term may also be applied. The provisions of the Codes, however, embrace legal actions; and in them it cannot generally be said that there is any fund, property, or estate, in relation to which the questions at issue have arisen, and which can be regarded as the 'subject.' In a very large proportion of legal actions, therefore, the term 'subject of the action' can only be conceived of in the second sense which has been attributed to it, and denotes the totality of questions at issue between the parties, embracing, in short, both the primary rights and duties of the litigants, and the remedial rights and duties which have sprung from the injuries complained of. The term does not seem capable of any clear and complete analysis, and the result is that it may denote the 'thing,' if any,—land, chattel, person, fund, estate, and the like,—in respect of which rights are sought to be maintained and duties enforced, or it may denote the sum of the questions between the parties to be determined by the judgment of the court. The latter meaning is distinguishable and is to be distinguished from the 'object of the action,' which is always the relief to be obtained by the determination of the questions which constitute the 'subject of the action.' "

This seems sufficiently vague and confusing, but when we come to the discussion of the term under the counterclaim section, at sec. 651 of the same work, we find a definition which seems to disregard the previous discussions entirely, viz.:

"It would, as it seems to me, be correct to say in all cases, legal or equitable, that the 'subject of the action' is the plaintiff's main *primary right,* which has been broken, and by means of whose breach a remedial right arises. Thus, the right of property and possession in ejectment and replevin, the right of possession in trover or trespass, the right to the money in all cases of debt, and the like, would be the 'subject' of the respective actions. Although in a certain sense, and in some classes of suits, the things themselves, the land or chat-

tels, may be regarded as the 'subject,' and are sometimes spoken of as such, yet this cannot be true in all cases; for in many actions there is no such specific thing in controversy over which a right of property exists. The primary right, however, always exists, and is always the very central element of the controversy around which all the other elements are grouped, and to which they are subordinate. In possessory and proprietary actions, this right, which will then be always one of property or of possession, will be intimately associated with the specific thing itself which is the *object* of the right; but this relation is not and cannot be universal. It seems, therefore, more in accordance with the nature of actions and more in harmony with the language of the statute to regard the 'subject of the action' as denoting the plaintiff's *principal primary right* to enforce or maintain which the action is brought, than to regard it as denoting the specific thing in regard to which the legal controversy is carried on. In this manner alone can we arrive at a *general* rule applicable to all possible cases, and the rule thus reached fully satisfies all the requirements of the legislative language, and can be invoked in all classes of actions. While I suggest and adopt this meaning of the term 'subject,' I freely concede that no decision, so far as I have discovered, pronounces this interpretation to be the only one admissible; many cases sanction it, none directly reject it; but none, on the other hand, have gone so far as to declare in its favor to the exclusion of all other meanings. The construction proposed, as it has been judicially approved in many instances, would remove all doubt and conflict of opinion, and would furnish a simple and practical rule of universal application."

Acknowledging as we do Mr. Pomeroy's very valuable services to the profession and to the law, we think it must be admitted that he also has left the question of the meaning of "subject of action" in great confusion.

Mr. Nichols, in vol. 1 of his work on New York Practice, at page 68 quotes Mr. Pomeroy's first definition, "the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted," and escapes any further difficulty by not attempting any additional discussion of the subject.

Mr. Bliss, in his work on Code Pleading (3d ed.), has also attempted to reach a conclusion on the subject, and perhaps with some greater degree of success. Thus he says at sec. 126:

"The cause of action has been described as being a legal wrong threatened or committed against the complaining párty; and the object of the action is to prevent or redress the wrong by obtaining some legal relief. The subject of the action is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the court, nor is it that which the court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject matter, or other thing involved in the dispute."

He then proceeds to state what he deems to be the subject matter of various contract actions, and proceeds with the consideration of tort actions as follows:

"In an action for a tort, the injury complained of is the wrong, and the subject of the action would be that right, interest [relation], or property which has been affected—as, in replevin or trover, the property taken; for libel or slander, the plaintiff's character or occupation; for an injury to a servant, the service; for the seduction of, or for harboring a wife, the marital relation; for negligence, the duty, property, or person in respect to which the negligence occurred; for false imprisonment, the plaintiff's liberty; and for trespass upon property, the property."

He also clearly appreciates that the words should be held to mean the same thing wherever used, and in sec. 373 makes the following observations concerning the term as used in the counterclaim statute:

"I know of no reason why the same interpretation should not be given it in this connection as when it is used to designate a class of causes of action that may be united in one proceeding, and the reader is referred to the view heretofore taken. This general view is not elaborated in any of the re-

ported cases—it is not, perhaps, the duty of judges to write essays, only to apply the law to the facts before them,—but by a preponderance of authority, it is recognized, and the cloudiness, if not blunders, that are seen in this connection, have arisen chiefly from a failure to distinguish the 'subject' of the action from the 'cause,' or from the 'object' of the action, or from the facts which constitute it. Our system of pleading will never be reduced to scientific accuracy until the statutory phrases embodying it come to have a fixed signification. Technics are essential to exact knowledge. The pleader may state, in common language, the facts that constitute his cause of action, because he describes the common events of life, and yet, at every step, he is controlled by the stern rules of legal logic. Looseness, indefiniteness, uncertainty in the interpretation of phrases that control his action, leave him wholly at sea, and tossed about by the shifting winds of mere opinion, or, perhaps, caprice. It is because a fixed and definite meaning has not been given to the term 'subject of the action'—because it so often fails to present to the mind any distinct conception,—that we find so many differences of opinion in respect to this class of counterclaims, and, as we shall presently see, nowhere does the conception seem to be less certain than in the great state to whose jurisprudence we owe so much, and whose enlightened bar first called the new system into existence."

In this connection we will again refer to the case of *Scarborough v. Smith*, 18 Kan. 399, where, under the joinder clause which we are considering, it was held that an action of ejectment, an action to recover the value of the rents and profits of the same property, and an action for partition thereof could be joined because they all arose out of transactions connected with one subject of action, which was said to be "the right to use and enjoy in the manner he chooses his interest in said real property with all the proceeds and avails thereof." And it is further said: "Of course the *'subject* of action' is not the *'cause* of action,' or the cause of *any* action, or *any cause* of action. It is simply one of the elements of each of the several causes of action, uniting and binding them together in one action."

We are not to be understood as approving without qualification the propositions laid down by Pomeroy and Bliss in the ·quoted paragraphs. The quotations have been made rather ·for the purpose of showing the drift of thought on the subject in two acute legal minds. .We do not propose in the present case to attempt to lay down any hard-and-fast definition which shall be applicable to all cases which may arise. Sufficient unto the day is the evil thereof.

But we feel that we must recede from the proposition laid ·down in the *Telulah Case* (132 Wis. 425, 112 N. W. 522), to wit, that the subject of the action is composed of the plaintiff's right and the defendant's invasion thereof. If the phrase stood alone, this might be logically correct; but when we face the fact that we must differentiate *subject of action* from *cause of action,* and when we also know that the definition last quoted *must* be applied to *cause of action,* we must find some other meaning for subject of action.

It seems probable, as Mr. Pomeroy suggests, that the Code makers used the term having in mind the term *subject matter* ·of *the action,* which was in use before the Code, and which is defined by Bouvier as "the cause, the object, the thing in dispute." It seems also probable that they had in mind equitable actions involving complicated matters arising out of and ·surrounding a single parent stem or primary right, which manifestly ought to be all handled at the same time and by the .same court in order to settle closely related rights; but we cannot assent to the suggestion of Mr. Pomeroy (sec. 369) that it probably has no application to legal causes of action, although it was said by this court in the *Emerson Case,* 124 Wis. 369 (102 N. W. 329), at page 389, that "doubtless . . . the second clause of the statute applies more generally, if not exclusively, to equitable suits."

There can be little doubt that the clause will find its most frequent application in equitable actions, but the Code makers neither had nor expressed any intention to limit it in that way. The very wording of the introductory words of the

clause precludes that idea: causes of action "whether . . . legal or equitable or both" may be joined where they arise out of transactions connected with the same subject of action. They intended to give the court power to lay hold of, sift out, and determine in one action rights and wrongs between the same parties which had this element of unity, and they did not intend to limit this broad power in any way. It should be construed and administered by the courts with a view to most effectively and fully carry out its purpose so far as may be consistent with the orderly and prompt administration of justice and the preservation of the rights of litigants.

We have before us two causes of action, one by the owner of certain lands to prevent the further assertion of a wrongful claim of title to those lands, and another to recover for a wrongful entry on the same lands by the same person. Can they be joined? They do not arise out of the same transaction. One arises out of some oral or written claim, the other out of an actual physical entry on the land. Both of these are transactions under the rule heretofore given, but are they both connected with the same subject of action? Evidently we are obliged to define the words *subject of action* to reach an answer.

If we say that the subject of the action is the plaintiff's alleged right alone, *i. e.* his title, then could it be said logically that the physical trespass on the land was in any way connected with the subject? On the other hand, if we say that the subject of the action is the land alone and not the plaintiff's title thereto, could it be said logically that the false claim of title was connected with the subject? The questions suggest that either holding would be too narrow, and that with better reason it should be said in a case like the present that the subject of the action is composed both of the land and the plaintiff's alleged title taken together. Indeed, this seems the only logical holding. How can the title be disassociated from the land itself? The land must exist in order

that there be any title, and both land and title must exist to-- gether if the plaintiff have any standing in court or any right. to ask for affirmative action by a court of justice in his behalf.

Now, if the subject of the action, in cases like the present,. be the land and the plaintiff's title taken together, then any transaction which is connected with either the land or the· title is connected with the subject of action because the two are inseparable.

There are two reasons why, in actions involving conflicting claims or interests in specific real or personal property, the property itself must be considered as an essential part at least. of the subject of the action: *First,* because if it be not so, then the Code provisions before cited, which provide (1) that certain classes of actions shall be tried in the county where the· subject of the action is situated, and (2) that the summons. may be served by publication where the subject of the action is real or personal property in this state, become nonsense, because they can apply to nothing; *second,* because when it is. admitted that in using the words *subject of action* the Code· makers had in mind the idea of subject matter as used before· the Code, it must also be admitted that the words cover the specific real estate in any action where conflicting claims to· such real estate are in issue. Subject matter as used before the Code, when applied to such a case, meant the real estate itself. *Burrall v. Eames,* 5 Wis. 260.

But if it were to be held that the words in question refer only to specific real and personal property, then they could not apply to the actions involving only rights and wrongs not connected with specific property, and as to these latter actions,. comprising the great mass of ordinary litigation, there would either be no subject of action at all or the subject of action would be something of entirely different nature. It seems that. something like a uniform rule should be established if it be possible. The Code makers were striving for uniformity as well as for simplicity. If some essential basic element can be·

found which inheres in all causes of action, local as well as transitory, real as well as personal, which, in actions involving specific property, can be joined with the specific property, both together forming the subject, and which in other actions can stand alone or in connection with the intangible thing involved, like the character in slander, and form the subject, it would seem that this might be said to solve the problem.

It seems to us that this basic and fundamental element is to be found in the plaintiff's *main primary right,* for the invasion of which the action is brought. Thus, in controversies involving conflicting claims to specific real or personal property, the property itself plus the right, title, interest, claim, or lien upon that property which the plaintiff alleges and which gives him his standing in court, is to be considered as forming the subject of the action, and he may join to his first cause of action another based on a different transaction from the first, but which is connected with reasonable directness with either the property itself or with the plaintiff's title or interest therein alleged in the first cause of action. It seems to us that this solution of the questions harmonizes all of the Code provisions which use the term, and that it also solves to a very large extent, if not completely, the difficulties found by Mr. Pomeroy and which seem to have compelled him to disagree with himself. We think the principle will be found to be capable of satisfactory application to actions not involving property, but simply involving personal rights and wrongs. As said by Mr. Pomeroy at sec. 651: "The primary right, however, always exists, and is always the very central element of the controversy around which all the other elements are grouped and to which they are subordinate."

We therefore come to this conclusion: that in possessory and proprietary actions, whether involving real or personal property, the subject of action is composed of the plaintiff's primary right together with the specific property itself. Further than this we do not go, except to say that, as it seems to

us, the plaintiff's primary right which is alleged to have been invaded must in all other actions be held to be an essential part, and perhaps in many cases the whole, of the *subject of the action* as those words are used in the Code.

It follows that the two causes of action before us are properly joined.

*By the Court.*—Order affirmed.

Vinje. J.. took no part.